# Exhibit L

JENNIFER JUDIN, ESQ. (SBN 256973)
jjudin@dehay.com
JOANNA L. MACQUEEN, ESQ. (SBN 161281)
jmacqueen@dehay.com
SALIN EBRAHAMIAN, ESQ. (SBN 249762)
sebrahamian@dehay.com
DeHAY & ELLISTON LLP
800 West 6th Street, Suite 788
Los Angeles, CA 90017
Telephone: (213) 271-2727
Facsimile: (213) 271-2730

Attorneys for Defendants
PNEUMO ABEX LLC,
successor in interest to Abex Corporation

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MARY LOU SMITH, ROBERT T. SMITH, AND JAMIE FIERRO, individually and as successor in interest to ROBERT FRANK SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>A.W. CHESTERTON COMPANY, et al.,<br><br>Defendants. | CASE NO. BC 422461<br><br>SUPPLEMENTAL RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS |

PROPOUNDING PARTIES:      Plaintiffs Mary Lou Smith, Robert T. Smith, and Jamie Fierro, individually and as successor in interest to Robert Frank Smith

RESPONDING PARTY:      Defendant Pneumo Abex LLC, successor in interest to Abex Corporation

SET NUMBER:      One (1)

///

///

///

Defendant Pneumo Abex LLC, successor in interest to Abex Corporation (hereinafter "Abex"), by and through its attorneys of record, DeHay & Elliston LLP, hereby responds to these interrogatories, as follows:

## RESPONSES

INTERROGATORY NO. 1: With respect to the individual verifying these answers on your behalf, state the following:

(a)   His or her name;

(b)   His or her present business address; and

(c)   His or her present job title.

### RESPONSE TO INTERROGATORY NO. 1:

William V. Buccella, a vice president of Pneumo Abex LLC, 35 East 62nd Street, New York, New York, has signed the verification to these responses, which were prepared by legal counsel. See Verification (attached). William V. Buccella has been a vice president of Pneumo Abex LLC since August 16, 2008.

These responses are based upon such information and materials as are currently and reasonably available to Abex and Abex reserves the right to supplement or amend these responses as appropriate when and if additional relevant information or materials become available, including any provided by plaintiffs in this matter. Discovery and investigation are continuing. Abex does not concede that any of its responses to these interrogatories are or will be admissible evidence at a trial of this action. Abex does not waive any objection, on any ground, whether or not asserted herein, to the use of any such response at trial. To the extent the information contained herein differs in any respect from any prior response to discovery, these responses shall be deemed to update and supersede any prior answers or responses in any and all actions. Abex never mined or commercially sold raw asbestos fiber. To the best of current and reasonably available information and belief, Abex never manufactured and sold automotive brakes, brake assemblies, or brake shoes. (As used hereinafter,

2

"automotive" includes passenger cars and trucks, and light, medium, and heavy duty trucks, and related tractors, trailers, buses, and coaches.)  Rather, Abex manufactured and sold automotive friction products, some of which contained chrysotile asbestos only.  The responses of Abex hereinafter set forth are limited to providing information concerning domestic automotive friction products manufactured by Abex.

INTERROGATORY NO. 2:  Please state whether or not you are a corporation, and if so, state:

      (a)    Your correct corporate name;

      (b)    Your state of incorporation;

      (c)    The date of your incorporation;

      (d)    The address of your principal place of business; and

      (e)    Whether or not you have ever held a certificate of authority to do business in the state of California, and if so, the inclusive dates of each certificate.

RESPONSE TO INTERROGATORY NO. 2:

No.

INTERROGATORY NO. 3:  Have you ever manufactured, sold or distributed asbestos-containing automotive friction products under any other corporate name?  If so, please state each such name and the time during which you were so known or identified.

RESPONSE TO INTERROGATORY NO. 3:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex has manufactured, sold and/or distributed asbestos-containing automotive friction products under the

3

following names: American Brake Shoe and Foundry Company, American Brake Materials Corporation, American Brakeblok Corporation, American Brake Shoe Company, and Abex Corporation. Abex manufactured and sold various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex sold clutch facings from an unknown time period until approximately 1971.

**INTERROGATORY NO. 4:** Since 1930, have you controlled, purchased, or in any way acquired any interest of five percent or greater in any company which has mined, manufactured, produced, processed, compounded, sold, supplied, distributed and/or otherwise placed asbestos-containing automotive friction products in the stream of commerce, and if so, state:

    (a)    The name and address of said company;

    (b)    The dates you controlled, purchased or acquired any such interest; and

    (c)    Set forth the nature of the business as it pertains to such products.

**RESPONSE TO INTERROGATORY NO. 4:**

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex Corporation, Pneumo Abex LLC's predecessor, as defined herein, was incorporated as the American Brake Shoe and Foundry Company in New Jersey in 1902, and was reincorporated as that company in 1916 in Delaware. In 1926, the American Brake Shoe and Foundry Company caused to be incorporated a New York corporation named American Brake Materials Corporation. In 1933, American Brake Materials Corporation changed its name to American Brakeblok Corporation. In

4

1937, American Brakeblok Corporation merged with the American Brake Shoe and Foundry Company, and was thereafter operated as the American Brakeblok Division of that company. In 1943, the American Brake Shoe and Foundry Company changed its name to the American Brake Shoe Company. In 1966, the American Brake Shoe Company changed its name to Abex Corporation. In 1968, Abex Corporation became a wholly owned subsidiary of Illinois Central Industries, Inc. Illinois Central Industries, Inc. later changed its name to IC Industries, Inc. Abex later became a wholly owned subsidiary of IC Products Company, itself a wholly owned subsidiary of IC Industries, Inc. (IC Industries, Inc. changed its name to Whitman Corporation in 1988). In 1988, Abex Corporation was sold to PA Holdings Corporation. In 1990, Abex Corporation was absorbed into PA Holdings Corporation, which later changed its name to Pneumo Abex Corporation. In 2004, Pneumo Abex Corporation was merged into Pneumo Abex LLC.

Abex purchased The S.K. Wellman Company in 1963. To the best of current and reasonably available information and belief, The S.K. Wellman Company did not manufacture or distribute asbestos-containing products prior to Abex's purchase of The S.K. Wellman Company. Further, to the best of current and reasonably available information and belief, following its purchase by Abex, The S.K. Wellman Company business may have sold asbestos-containing automotive friction products. Abex sold The S.K. Wellman Company in 1971.

In addition, there may be additional corporate acquisitions involving Abex which are potentially responsive to this interrogatory but due to the passage of time, the change of the nature of its business, and the change in personnel, Abex lacks current knowledge of any such acquisitions.

**INTERROGATORY NO. 5:** Since 1930, did you have an ownership interest of five percent or greater in a company that either mines, produces, or sells raw asbestos fiber? If the answer is in the affirmative, state the following:

    (a)    The name of such corporation or entity;

    (b)    The date of incorporation or charter;

(c)     The state or country of incorporation;

(d)     Each such ownership interest owned in each corporation, setting forth any change in such interest;

(e)     The date such interest was acquired;

(f)     The date of formation of such corporation or entity;

(g)     The date such interest changed or terminated, if applicable;

(h)     The name and location of each asbestos mine so owned; and

(i)     The grade and type of asbestos mined at each mine.

**RESPONSE TO INTERROGATORY NO. 5:**

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), no.

**INTERROGATORY NO. 6:**  Please state whether you have ever engaged in the following activities with regard to raw asbestos fiber since 1930, and if so, please state the inclusive dates of such activity:

(a)     Mining;

(b)     Milling;

(c)     Supplying;

(d)     Importing for sale or distribution as raw asbestos fiber;

(e)     Processing for sale or distribution as raw asbestos fiber;

(f)     Distributing;

(g)     Marketing; or

(h)     Selling.

**RESPONSE TO INTERROGATORY NO. 6:**

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), no.

**INTERROGATORY NO. 7:**  If the answer to Interrogatory No. 6 regarding "raw asbestos fiber" is yes, please state the following:

(a)     The trade, brand name and generic name of such raw asbestos fiber mined, milled, supplied, distributed, processed, imported, labeled, or marketed in any form or quantity between 1930 and 1986;

6

(b)    The date(s) in regard to each such raw asbestos fiber you:

    (i)    began engaging in each activity with respect to raw asbestos fiber;

    (ii)    ceased each activity with respect to raw asbestos fiber;

    (iii)    began marketing raw asbestos fibers; and

    (iv)    recalled it from the market, if ever.

(c)    A description of the type and grade of the raw asbestos fiber;

(d)    A description of the physical appearance and nature of each such raw asbestos fiber, including any color coding, distinctive markings or logo;

(e)    A detailed description of the intended uses of each type and grade of raw asbestos fiber, including any temperature limits for each such use;

(f)    The name and address of the suppliers of the raw asbestos fibers to you;

(g)    Describe all records which set forth any of the foregoing information sufficiently to identify them for discovery purposes and identify the custodian (giving name and address) of each such record.

RESPONSE TO INTERROGATORY NO. 7:

Not applicable.

INTERROGATORY NO. 8:  Did you, or any of your predecessors-in-interest, manufacture brake shoes, brake blocks, brake pads, brake linings, brake bands, clutch facings, or clutch plates which contained asbestos for the following uses at any time since 1930?  If yes, please identify the products you manufactured and the use or uses for which you manufactured the product.

(a)    Automobiles/light duty trucks;

(b)    Heavy duty trucks;

(c)    Trailers; and/or

(d)    Buses/coaches.

RESPONSE TO INTERROGATORY NO. 8:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

7

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)):

### RESPONSE TO INTERROGATORY NO. 8 SUBPART (a):

Abex manufactured various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex manufactured brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for automobiles or light duty trucks.

To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing clutch facings.

### RESPONSE TO INTERROGATORY NO. 8 SUBPART (b):

Abex manufactured various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex manufactured brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for heavy duty trucks.

To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing clutch facings.

### RESPONSE TO INTERROGATORY NO. 8 SUBPART (c):

Abex manufactured various asbestos-containing automotive friction products during various

8

periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex manufactured brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for trailers.

To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing clutch facings.

RESPONSE TO INTERROGATORY NO. 8 SUBPART (d):

Abex manufactured various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex manufactured brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for buses or coaches.

To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing clutch facings.

INTERROGATORY NO. 9: For each type of asbestos-containing product identified in response to Interrogatory No. 8, please state:

(a)    The trade, brand and generic name by which the product was known since 1930;

(b)    The date(s) you:

    (i)     began manufacturing the product;

    (ii)    began marketing the product;

    (iii)   ceased to manufacture the product;

9

(iv)  recalled the product from the market, if ever, as a result of asbestos-related health concerns, if any.

(c)  A description of the type and grade of raw asbestos fiber in the asbestos-containing product, and the range of asbestos fiber by percentage of weight in each such asbestos-containing product since 1930;

(d)  A general description of the physical appearance and nature of each type of asbestos-containing product, including any generally used method of identification of the product such as distinctive markings, and/or logos and the dates, inclusive, during which they appeared;

(e)  The name and address of the suppliers of the raw asbestos fiber used in each type of asbestos-containing product, and the time period of supply;

(f)  The purpose for the inclusion of asbestos in each type of asbestos-containing product (i.e., binding agent, fire retardant, etc.);

(g)  The type of shipping package, and the range of shipping package dimensions, and the inclusive period of time during which you used each such container, package, or carton;

(h)  A general description of any printed material or trademark appearing on each type of container, package, or carton identified in (g) above, and the inclusive period of time during which each such combination of printed material and trademark was used;

(i)  A general description of any written instructions, wrapping, or printed insert, which was, or is, placed in the container, package or carton with each such product, and the inclusive period of time during which each written instruction, wrapping or printed insert was placed in the container, package or carton;

(j)  Whether or not you have in your possession or under your control samples or exemplars of (1) each container, package, or carton; (2) each printed material or trademark appearing thereon; or, (3) each written instruction, wrapping or printed insert mentioned in your responses to (g), (h) and (i) above;

(k)  Did you place edge codes on the asbestos-containing products you manufactured, and if so during what period of time;

RESPONSE TO INTERROGATORY NO. 9:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith

10

effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)):

RESPONSE TO INTERROGATORY NO. 9 SUBPART (a):

Abex manufactured various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex manufactured automotive brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only.

To the best of current and reasonably available information and belief, Abex manufactured and sold its asbestos-containing automotive friction products under one or more of the following trade names at various times:

| Trade Name | Year of Registration or First Use |
|---|---|
| American Brake Materials | 1930 |
| Brakeblok. | 1936 |
| American Brakeblok | 1938 |
| Abex | 1941 |
| Brake Shoe | 1943 |
| Esline | 1965 |
| Stopper | 1966 |
| American Eagle | 1974 |
| Crossing Guard | 1975 |
| Protector | 1975 |
| 121 Super Brakes | 1975 |
| Velvetouch Organik. | Unknown |

Abex is aware of a document which suggests that Abex may have used the "Comet" trade name for a brief period of time in 1977.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (b) (i):

Abex began manufacturing asbestos-containing automotive friction products in approximately 1927.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (b) (ii):

Abex began marketing asbestos-containing automotive friction products in approximately

11

1927.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (b) (iii):

Abex ceased to manufacture asbestos-containing automotive friction products in 1987.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (b) (iv):

To the best of current and reasonably available information and belief, Abex is unaware of any recall of any of the above-listed products.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (c):

Abex's asbestos-containing automotive friction products contained approximately 25 to 70 percent chrysotile asbestos only.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (d):

Abex's asbestos-containing automotive brake blocks, brake linings, and brake pads were flat black, charcoal and gray in color, and were shaped into curved, linear segments and pad shapes.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (e):

Abex does not possess complete knowledge concerning the identity of all its suppliers or the specific time periods of its purchase from specific suppliers of raw chrysotile asbestos fibers, which were the only asbestos fibers ever utilized by Abex in the manufacture of its asbestos-containing automotive friction products.

To the best of current and reasonably available information and belief, Abex is generally aware that, during various periods since 1948 and no later than 1987, when Abex ceased the manufacture of asbestos-containing automotive friction products, raw chrysotile asbestos fibers were purchased from the following suppliers for use in manufacturing automotive friction products:

Asbestos Corporation, Ltd.
Thetford Mines
Quebec, Canada

Bell Asbestos Mines, Ltd.

12

Thetford Mines
Quebec, Canada

GAF Corp.
Hyde Park, Vermont

Lake Asbestos
Black Lake
Quebec, Canada

Johns-Manville Corporation
Canadian Johns-Manville Corp.
Asbestos, Canada

Vermont Asbestos Group, Inc.
Hyde Park, Vermont

RESPONSE TO INTERROGATORY NO. 9 SUBPART (f):

Chrysotile asbestos, the only type of asbestos fibers ever used by Abex in the manufacture of its friction products, was utilized in Abex's asbestos-containing automotive friction products because it represented a uniquely favorable combination of properties, including thermal stability, friction level, reinforcing properties, cost, availability, compatibility with production processes and manufacturing equipment, acceptability and familiarity to customers, and safety with regard to its use in friction products.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (g):

Abex's asbestos-containing automotive friction products were generally packaged in cardboard boxes according to size. Abex packaging varied from product to product over the many decades of its corporate existence.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (h):

To the best of current and reasonably available information and belief, some of Abex's asbestos-containing automotive friction products were generally packaged in plain, brown or tan cardboard boxes according to size with the end-label being imprinted with colors. The brand name

13

appeared on the packages as did the product name. Abex packaging varied from product to product over the many decades of its corporate existence.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (i):

Starting in the mid-1970s, and perhaps earlier, Abex commenced the placement of warning labels on its asbestos-containing automotive friction products. This label read as follows:

> CAUTION: CONTAINS ASBESTOS FIBERS.
> AVOID CREATING DUST. BREATHING ASBESTOS
> DUST MAY CAUSE SERIOUS BODILY HARM.

Abex does not believe the wording of this warning was ever changed. To the best of current and reasonably available information and belief, the warning labels were affixed to automotive friction product packages.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (j):

To the best of current and reasonably available information and belief, Abex is in possession of two sample packages for "Abex" automotive friction products and each sample package includes the warning label. A photograph of each sample package with the warning label is attached.

RESPONSE TO INTERROGATORY NO. 9 SUBPART (k):

To the best of current and reasonably available information and belief, at least some of Abex's asbestos-containing automotive friction products carried edge codes but the period of time is unknown.

INTERROGATORY NO. 10: Did you or any of your predecessors-in-interest, sell or distribute any brake shoes, brake blocks, brake pads, brake linings, brake bands, clutch facings or clutch plates which contained asbestos for any of the uses listed below, at any time between 1930 and 1986? If yes, please identify the products you distributed or sold and the use or uses for which you distributed or sold the product.

    (a)    Automobiles/light duty trucks;

    (b)    Heavy duty trucks;

    (c)    Trailers; and/or

14

(d)    Buses/coaches.

RESPONSE TO INTERROGATORY NO. 10:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)):

RESPONSE TO INTERROGATORY NO. 10 SUBPART (a):

Abex sold various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex sold brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not sell asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for automobiles or light duty trucks.

To the best of current and reasonably available information and belief, Abex sold clutch facings from an unknown time period until approximately 1971. The clutch facings were typically used in clutch assemblies. Abex is unaware of all of the potential applications of clutch facings for which they may have been marketed, or not, for uses listed in subpart (a).

RESPONSE TO INTERROGATORY NO. 10 SUBPART (b):

Abex sold various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and

15

belief, Abex sold brake blocks, brake linings and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not sell asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for heavy-duty trucks.

To the best of current and reasonably available information and belief, Abex sold clutch facings from an unknown time period until approximately 1971. The clutch facings were typically used in clutch assemblies. Abex is unaware of all of the potential applications of clutch facings for which they may have been marketed, or not, for uses listed in subpart (b).

RESPONSE TO INTERROGATORY NO. 10 SUBPART (c):

Abex sold various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex sold brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex did not sell asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for trailers.

To the best of current and reasonably available information and belief, Abex sold clutch facings from an unknown time period until approximately 1971. The clutch facings were typically used in clutch assemblies. Abex is unaware of all of the potential applications of clutch facings for which they may have been marketed, or not, for uses listed in subpart (c).

RESPONSE TO INTERROGATORY NO. 10 SUBPART (d):

Abex manufactured and sold various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex manufactured and sold brake blocks, brake linings, and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available

16

information and belief, Abex did not manufacture or sell asbestos-containing automotive brake shoes. Abex is aware that some brake blocks, brake linings, and brake pads could have been used in some braking systems for buses or coaches.

To the best of current and reasonably available information and belief, Abex sold clutch facings from an unknown time period until approximately 1971. To the best of current and reasonably available information and belief, Abex did not manufacture asbestos-containing clutch facings. Abex states it sold clutch facings. The clutch facings were typically used in clutch assemblies. Abex is unaware of all of the potential applications of clutch facings for which they may have been marketed, or not, for uses listed in subpart (d).

**INTERROGATORY NO. 11:** For each type of asbestos-containing product identified in response to Interrogatory No. 10, please state:

    (a)    The trade, brand and generic name by which the product was known since 1930;

    (b)    The date(s) you:

        (i)    began selling or distributing the product;

        (ii)    ceased to sell or distribute the product;

        (iii)    recalled the product from the market, if ever, as a result of asbestos-related health concerns, if any;

    (c)    A description of the type and grade of raw asbestos fiber in the asbestos-containing product, and the range of asbestos fiber by percentage of weight in each such asbestos-containing product since 1930;

    (d)    A general description of the physical appearance and nature of each type of asbestos-containing product, including any generally used method of identification of the product such as distinctive markings, and/or logos and the dates, inclusive, during which they appeared. In the alternative to describing the markings and/or logos, please identify the manufacturer or distributor of each type of asbestos-containing product;

    (e)    The name and address of the suppliers of the raw asbestos fiber used in each type of asbestos-containing product, and the time period of supply;

    (f)    The purpose for the inclusion of asbestos in each type of asbestos-containing product (i.e., binding agent, fire retardant, etc.);

17

(g)   The type of shipping package, the range of shipping package dimensions, and the inclusive period of time during which you used each such container, package, or carton;

(h)   A general description of any printed material or trademark appearing on each type of container, package, or carton identified in (g) above, and the inclusive period of time during which each such combination of printed material and trademark was used;

(i)   A general description of any written instructions, wrapping, or printed insert, which was, or is, placed in the container, package or carton with each such product, and the inclusive of time during which each written instruction, wrapping or printed insert was placed in the container, package, or carton;

(j)   Whether or not you have in your possession or under your control samples or exemplars of (1) each container, package, or carton; (2) each printed material or trademark appearing thereon; or, (3) each written instruction, wrapping or printed insert mentioned in your response to (g), (h) and (i) above;

(k)   Did you place edge codes on the asbestos-containing products you manufactured, and if so during what period of time?

## RESPONSE TO INTERROGATORY NO. 11:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)):

## RESPONSE TO INTERROGATORY NO. 11 SUBPART (a):

Abex sold various asbestos-containing automotive friction products during various periods from approximately 1927 to 1987. To the best of current and reasonably available information and belief, Abex sold automotive brake linings and brake pads, some of which contained chrysotile asbestos only. To the best of current and reasonably available information and belief, Abex sold

18

clutch facings from an unknown time period until approximately 1971.

To the best of current and reasonably available information and belief, Abex manufactured and sold its asbestos-containing automotive friction products under one or more of the following trade names at various times:

| Trade Name | Year of Registration or First Use |
|---|---|
| American Brake Materials | 1930 |
| Brakeblok | 1936 |
| American Brakeblok | 1938 |
| Abex | 1941 |
| Brake Shoe | 1943 |
| Esline | 1965 |
| Stopper | 1966 |
| American Eagle | 1974 |
| Crossing Guard | 1975 |
| Protector | 1975 |
| 121 Super Brakes | 1975 |
| Velvetouch Organik | Unknown |

Abex is aware of a document which suggests that Abex may have used the "Comet" trade name for a brief period of time in 1977.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (b) (i):

Abex began selling asbestos-containing automotive friction products in approximately 1927. To the best of current and reasonably available information and belief, Abex is unaware of the date that it began selling clutch facings.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (b) (ii):

Abex ceased to sell asbestos-containing automotive friction products in 1987. To the best of current and reasonably available information and belief, Abex ceased to sell clutch facings in approximately 1971.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (b) (iii):

To the best of current and reasonably available information and belief, Abex is unaware of any

19

recall of any of the above-listed products.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (c):

Abex's asbestos-containing automotive friction products contained approximately 25 to 70 percent chrysotile asbestos only.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (d):

Abex's asbestos-containing automotive brake blocks, brake pads, brake linings were flat black, charcoal and gray in color, and were shaped into curved, linear segments and pad shapes.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (e):

Abex does not possess complete knowledge concerning the identity of all its suppliers or the specific time periods of its purchase from specific suppliers of raw chrysotile asbestos fibers, which were the only asbestos fibers ever utilized by Abex in the manufacture of its asbestos-containing automotive friction products.

To the best of current and reasonably available information and belief, Abex is generally aware that, during various periods since 1948 and no later than 1987, when Abex ceased the manufacture of asbestos-containing automotive friction products, raw chrysotile asbestos fibers were purchased from the following suppliers for use in manufacturing friction products:

Asbestos Corporation, Ltd
Thetford Mines
Quebec, Canada

Bell Asbestos Mines, Ltd.
Thetford Mines
Quebec, Canada

GAF Corp.
Hyde Park, Vermont

Lake Asbestos
Black Lake
Quebec, Canada

20

Johns-Manville Corporation
Canadian Johns-Manville Corp.
Asbestos, Canada

Vermont Asbestos Group, Inc.
Hyde Park, Vermont

RESPONSE TO INTERROGATORY NO. 11 SUBPART (f):

Chrysotile asbestos, the only type of asbestos fibers ever used by Abex in the manufacture of its friction products, was utilized in Abex's asbestos-containing automotive friction products because it represented a uniquely favorable combination of properties, including thermal stability, friction level, reinforcing properties, cost, availability, compatibility with production processes and manufacturing equipment, acceptability and familiarity to customers, and safety with regard to its use in friction products.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (g):

Abex's asbestos-containing automotive friction products were generally packaged in cardboard boxes according to size. Abex packaging varied from product to product over the many decades of its corporate existence.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (h):

To the best of current and reasonably available information and belief, some of Abex's asbestos-containing automotive friction products were generally packaged in plain, brown or tan cardboard boxes according to size with the end-label being imprinted with colors. The brand name appeared on the packages as did the product name. Abex packaging varied from product to product over the many decades of its corporate existence.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (i):

Starting the mid-1970s, and perhaps earlier, Abex commenced the placement of warning labels on its asbestos-containing automotive friction products. This label read as follows:

21

> CAUTION: CONTAINS ASBESTOS FIBERS.
> AVOID CREATING DUST. BREATHING ASBESTOS
> DUST MAY CAUSE SERIOUS BODILY HARM.

Abex does not believe the wording of this warning was ever changed. To the best of current and reasonably available information and belief, the warning labels were affixed to automotive friction product packages.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (j):

To the best of current and reasonably available information and belief, Abex is in possession of two sample packages for "Abex" automotive friction products and each sample package includes the warning label. A photograph of each sample package with the warning label is attached.

RESPONSE TO INTERROGATORY NO. 11 SUBPART (k):

To the best of current and reasonably available information and belief, at least some of Abex's asbestos-containing automotive friction products carried edge codes but the period of time is unknown.

INTERROGATORY NO. 12: Did you sell or distribute any brake shoes, brake blocks, brake pads, brake linings, brake bands, clutch facings or clutch plates which contained asbestos to any of the companies or entities listed below, at any time since 1930? If yes, please identify the products and the use or uses for which you distributed or sold the product.

(a)    Automobile/truck manufacturers;

(b)    Private brand account customers within Los Angeles County:

(c)    Aftermarket or replacement parts retailers within Los Angeles County;

(d)    Warehouse distributors who distribute the product under your name within Los Angeles County; and/or

(e)    Retailers who sold the product under your name within Los Angeles County.

RESPONSE TO INTERROGATORY NO. 12:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to

22

the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)):

RESPONSE TO INTERROGATORY NO. 12 SUBPART (a):

To the best of current and reasonably available information and belief, Abex states that no later than December 31, 1987 it manufactured asbestos-containing heavy duty brake blocks that were sold to Ford Motor Company. Abex lacks personal knowledge and information sufficient to respond any further to this interrogatory regarding the details of the years of sale and the products sold to Ford Motor Company. To the best of current and reasonably available information and belief, Abex states that no later than December 31, 1987 it manufactured some asbestos-containing automotive friction products that were sold to Kenworth Truck Company, Peterbilt Corporation, International Harvester, Mack Trucks, Freightliner, Utility Trailer Manufacturing Company, General Motors Corporation, Chrysler Corporation, Fruehauf, Great Dane Trailers, Rockwell International, Eaton Corporation, Kelsey-Hayes Company, Osh Kosh Truck Corporation, Standard Forge & Axle Company, and Shuler Axle. Abex lacks personal knowledge and information sufficient to provide the years of sale and the exact nature of the friction materials sold to Kenworth Truck Company, Peterbilt Corporation, International Harvester, Mack Trucks, Freightliner, Utility Trailer Manufacturing Company, General Motors Corporation, Chrysler Corporation, Fruehauf, Great Dane Trailers, Rockwell International, Eaton Corporation, Kelsey-Hayes Company, Osh Kosh Truck Corporation, Standard Forge & Axle Company, and Shuler Axle, such as whether it was brake blocks, brake pads, brake linings, or clutch facings.

23

RESPONSE TO INTERROGATORY NO. 12 SUBPART (b):

To the best of current and reasonably available information and belief, unknown.

RESPONSE TO INTERROGATORY NO. 12 SUBPART (c):

To the best of current and reasonably available information and belief, Abex states that no later than December 31, 1987 it manufactured some asbestos-containing automotive friction products that were sold to Genuine Parts Company and Midas. Abex lacks personal knowledge and information sufficient to provide the years of sale and the exact nature of the friction materials sold to Genuine Parts Company and Midas, such as whether it was brake blocks, brake pads, brake linings, or clutch facings.

RESPONSE TO INTERROGATORY NO. 12 SUBPART (d):

To the best of current and reasonably available information and belief, unknown. Abex is unable to provide a response to the information sought in this interrogatory regarding "[w]arehouse distributors" because that term is undefined. Abex also does not have a sufficient understanding of what is meant by "[w]arehouse distributors" to respond to this interrogatory. Moreover, Abex has provided in these responses all information Abex has regarding any type of distributor of its asbestos-containing automotive friction products regardless of whether these entities are "warehouse" or any other type of "distributor."

RESPONSE TO INTERROGATORY NO. 12 SUBPART (e):

To the best of current and reasonably available information and belief, Abex states that no later than December 31, 1987 it manufactured some asbestos-containing automotive friction products that were sold to Genuine Parts Company and Midas. Abex lacks personal knowledge and information sufficient to provide the years of sale and the exact nature of the friction material sold to Genuine Parts Company and Midas, such as whether it was brake blocks, brake pads, brake linings or clutch facings.

24

INTERROGATORY NO. 13: If you answered yes to Interrogatory No. 12, please provide the name and address of each entity or company to whom you sold or distributed the product and the inclusive dates of sale or distribution.

RESPONSE TO INTERROGATORY NO. 13:

See Objections and Response to Interrogatory No. 12, which are incorporated herein, as if fully rewritten. Subject to the foregoing, Abex is unaware of any further information responsive to this interrogatory.

INTERROGATORY NO. 14: If you entered into any agreements since 1930 for the rebranding of asbestos-containing automotive friction products manufactured, sold, distributed, or supplied by another company for resale or distribution by you, within Los Angeles County, describe the parties to the agreement, the duration of the agreement, and the names of each product covered by each agreement.

RESPONSE TO INTERROGATORY NO. 14:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), and to the best of current and reasonably available information and belief, Abex is unaware of any rebranding agreements responsive to this interrogatory.

INTERROGATORY NO. 15: Did you purchase or acquire any of the raw asbestos you used, processed, manufactured, supplied, distributed, labeled or sold from the General Services Administration, or any branch or agency of the United States government since 1930? If yes, state:

(a)    The name and address of the agency which supplied the asbestos;

(b)    The grade and types of asbestos purchased or acquired;

(c)    The quantities of each type of asbestos purchased or acquired annually from 1930;

25

(d)   The means of packaging; and

(e)   Any health warnings which accompanied each shipment of asbestos, and indicate when the warnings were first made.

**RESPONSE TO INTERROGATORY NO. 15:**

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), no.

**INTERROGATORY NO. 16:** As to each asbestos-containing product listed in your preceding answers to these interrogatories, did you put on such asbestos-containing automotive friction product or its container any warning of a potential hazard to health resulting from use of or exposure to such product? If so, state:

(a)   Each warning with particularly, including, generally, the size, color, location, or other content; whether the warning was on the product or the product's container, or on a tag which accompanied the product;

(b)   The inclusive dates during which you used each such warning on each of your asbestos-containing automotive friction products;

(c)   Identify the name and address of your custodian of records who presently has possession of samples, photographs or documents depicting the above warnings.

**RESPONSE TO INTERROGATORY NO. 16:**

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), starting in the mid-1970s, and perhaps earlier, Abex commenced the placement of warning labels on its asbestos-containing automotive friction products. This label read as follows:

> CAUTION:  CONTAINS ASBESTOS FIBERS.
> AVOID CREATING DUST.  BREATHING ASBESTOS
> DUST MAY CAUSE SERIOUS BODILY HARM.

26

Abex does not believe the wording of this warning was ever changed. To the best of current and reasonably available information and belief, the warning labels were affixed to automotive friction product packages. To the best of current and reasonably available information and belief, Abex is in possession of two sample packages for "Abex" automotive friction products and each sample package includes the warning label. A photograph of each sample package with the warning label is attached.

**INTERROGATORY NO. 17:** Identify all of this defendant's present and former executives, officers, or other managerial employees who have been deposed by plaintiff in cases involving automotive repair workers or their heirs who are suing or have sued you for illnesses or injuries allegedly caused, in whole or in part, by exposure to asbestos dust allegedly created by your asbestos-containing automotive friction products. Identify the name of the case, the court of filing, the court docket number, and the date of the deposition.

RESPONSE TO INTERROGATORY NO. 17:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex former and current officers and former employees have given testimony in the following lawsuits:

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| 1. | Blackwell, Charles | 11/19/1984 | Dorothy St. Jacque, et al. v. John-Manville Corporation, et al,, #CJ37465, Superior Court, Los Angeles County, CA | Greene Broillet & Wheeler, 100 Wilshire Blvd., 21st Fl, Santa Monica, CA 90401; 310.576.1200 | Brown & Toleu, Ltd., Court Reporters, 4625 South Wendler Drive, Ste 216, Tempe, Arizona 85282, 602.254.5479, brownandtoleu@brownandtoleu.com |
| | | 11/24/2003 | Joyce Sprague, Administratrix of the Estate of Thomas Sprague, Dec., Civil Div, GD #97-2029, Court of Common Pleas, Allegheny County, PA | Goldberg Persky & White, 1030 5th Ave, Pittsburgh, PA 15219; 412.471.3980 | Hawkins & Campbell, 800 N 4th St, Phoenix, AR 85004, 602.254.6147 |
| 2. | Borcherding, C. H. | 9/27/1984 9/28/1984 | Dorothy St. Jacque, et al. v. John-Manville Corp., Civil | Greene Broillet & Wheeler, 100 Wilshire | Zahn, Hall & Zahn, 219 W Blue St, Wainwright Bldg, |

27

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | Action #C 137465, Superior Court, Los Angeles County, CA | Blvd., 21st Fl, Santa Monica, CA 90401; 310.576.1200 | Norfolk, VA 23510; 804.627.6554 |
| 3. | Bretz, Earle L., Jr. | 9/27/2000 | Nancy E. Oship, Executrix of the Estate of Elliott G. Oship, Dec. and Individually as Surviving Spouse v. Abex Friction Products, et al., Index #096815, In Re: 8th Judicial District Asbestos Litigation, Supreme Court, Niagara County, NY | John P. Comerford, Esq., Lipsitz & Ponterio, 135 Delaware Ave, Ste 210, Buffalo, NY 14202; 716.849.0701 | Vincent M. Lucente & Assoc., Inc., 1800 2rd St, Ste 903, Sarasota, FL 34236; 941.954.2221 |
| | | 10/18/2006 | Bennett Scott Hoser and Christine A. Hoser v. Honeywell International, Inc., et al., Superior Court, Law Div.-Middlesex County, Civil Action-Asbestos Litigation, NJ | John P. Comerford, Esq., Lipsitz & Ponterio, 135 Delaware Ave, Ste 210, Buffalo, NY 14202; 716.849.0701 | Susan Koons, Court Reporter, Sargent's Group, 210 Main St Johnstown, PA 15901, http://courtreporting.sargents.com/order-a-transcript.html, 814.536-8908

Michael Gay, Certified Video Services |
| | | 11/15/2007 | Catherine DeFrancisco, Executrix of the Estate of Pasquale DeFrancisco of the Estate of Catherine DeFrancisco in her own right, v. Owens Illinois, Inc., et al., Docket #L-1127-05, Superior Court, Law Div., Camden County, Civil Action, NJ | Michael A. Galpern, Esq., Locks Law Firm, LLC, 457 Haddonfield Road, Ste 500, Cherry Hill, NJ 08002 | Knipes-Cohen-Veritext Court Reporting, 400 Market St, Phila, PA 19106; 215.928.9300 |
| 4. | Buccella, William V. | 11/13/2008 | Robert Poole v. Pneumo Abex LLC, et al., Case #06-L-9, Circuit Court, 7th Judicial Circuit, Morgan County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Fink & Carney, Reporting & Video Services 39 W 37th St, NY, NY 10018, 800.NYC.FINK |
| | | 2/5/2009 | Roger Holmes, Special Administrator of the Estate of Joan Holmes, Deceased v. Pneumo Abex Corporation, et al, Case #06-L-57, 11th Judicial Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Fink & Carney, Reporting & Video Services 39 W 37th St, NY, NY 10018, 800.NYC.FINK |
| | | 2/25/2009 | Roger Holmes, Special Administrator of the Estate of Joan Holmes, Deceased v. Pneumo Abex Corporation, et al, Case #06-L-57, 11th Judicial Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 B Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 3/26/2009 | Virginia Bohr, Individually, and as Personal Representative of the Estate of Kelley Bohr; Lisa Hagen and Carol Collins v. Chrysler LLC, et al, Case #BC-388611, Superior Court, Unlimited Jurisdiction, Los Angeles County, CA | Simon, Eddins & Greenstone, 301 East Ocean Blvd., Ste 1950, Long Beach, CA, 90802, 562.590.3400 | HG Litigation Services, 2041 Rosecrans Ave, Ste, 360, El Segundo, CA 90245, 310.414.9460 |

28

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | 3/31/2009 | Willie Martin and Betty Martin v. A.W. Chesterton Company, et al., Case #BC-378790, Superior Court, Unlimited Jurisdiction, Los Angeles County, CA | Keller, Fishback & Jackson, LLP, 18425 Burbank Blvd, Ste 610, Tarzana, CA 91356 | Advantage Court Reports, 18401 Burbank Blvd, Ste. 108, Tarzana, CA 91356, 818.609.9803 |
| | | 4/20/2009 | Juanita Rodarmel and Baxter Rodarmel v. Pneumo Abex Corporation, et al., Case No. 08 L 132, 11th Judicial Circuit, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 7/1/2009 | Marlene Goebel, individually and as successor in interest to the Estate of William James Goebel, deceased, Kirk Goebel, Bret Goebel and Reed Goebel vs. Bondex International, Inc., et al., Superior Court, Case # BC 390954, Unlimited Jurisdiction, Los Angeles County, CA | Waters Kraus & Paul, 222 N Sepulveda Blvd, Ste 1900, El Segundo, CA 310.414.8146 | HG Litigation Services, 2041 Rosecrans Ave, Ste, 360, El Segundo, CA 90245, 310.414.9460 |
| | | 7/7/2009 | Donald Duff And Sharon Duff v. A.W. Chesterton Company, et al., Case No. RG-09-434433, Superior Court, Unlimited Jurisdiction, Alameda County, CA | Clapper, Patti, Schweizer & Mason, 2330 Marinship Way, Ste 140, Sausalito, CA 94965, 415.332.4262 | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 7/7/2009 | Paul Baeskens and Lorene Baeskens v. A.W. Chesterton Company, et al., Case No. RG-09-434433, Superior Court, Unlimited Jurisdiction, Alameda County, CA | Levin Simes Kaiser & Gornick, LLP, 44 Montgomery Street, 36th Fl, San Francisco, CA 94104, 877.LSKG.LAW | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 7/8/2009 | Jay Burton Skewes and Anna Grace Skewes v. Advance Auto Parts, et al., Case No. 56-2008-00334248-CU-AS-VTA, Superior Court, Ventura County, CA | Clapper, Patti, Schweizer & Mason, 2330 Marinship Way, Ste 140, Sausalito, CA 94965, 415.332.4262 | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 1/12/2010 | Ronald Palmer and Carol Palmer v. ACandS, Inc., et al., Case No. CGC-09-275247, Superior Court, San Francisco County, CA | Harowitz & Tigerman, 450 Sansome Street, 3rd Fl, San Francisco, CA 94111, 415.788.1588. | Esquire Solutions, 515 N. Flagler Drive, Ste 200-Pavilion, West Palm Beach, FL 33401, 561.659.4155 |
| | | 1/15/2010 | Richard Randall and Bernice Eileen Dorothy Randall v. Bondex International, Inc., et al., Court File No. 61-CV-096373, 2nd Judicial District Court, Ramsey County, MN | Simon, Eddins & Greenstone, 3232 McKinney Ave, Ste 310, Dallas, TX 75204 | HG Litigation Services, 2501 Oak Lawn Ave., Ste 600, Dallas, TX, 214.521.1188 |
| | | 6/23/2010 | Norman Shoopman and | James Wylder, Esq., | Diane K. Whitwood, CSR, |

29

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | Sharon Shoopman, Case No. 09 L 159, Larry Dunham and Mary Dunham, Case No 08 L 158 v. Honeywell International, Inc., et al., Circuit Court, McLean County, IL | Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 7/22/2010 | Dennis C. Metzer and Mary Jane Metzer, individually and as husband and wife v. 3M Company, a/k/a Minnesota Mining & Manufacturing Company, et al., Court File No. 62-CV-101085, 2nd Judicial District Court, Ramsey County, MN | Simon, Eddins & Greenstone, 3232 McKinney Ave, Ste 610, Dallas, TX 75204 | HG Litigation Services, 888.656.DEPO, transcripts@hglitigation.com. |
| | | 8/5/2010 | Jeanette Brady v. Genuine Parts Company, et al., Case No. RG-09-9468095, Superior Court, Unlimited Jurisdiction, Alameda County, CA | Clapper, Patti, Schweizer & Mason, 2330 Marinship Way, Ste 140, Sausalito, CA 94965, 415.332.4262 | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 8/6/2010 | Jerold Stenberg v. A.W. Chesterton Company, et al., Case No. BC 415565, Superior Court, Unlimited Jurisdiction, Los Angeles County, CA

Richard Spencer and Evelyn Spencer v. Amcord, Inc., et al., Case No. BC 415565, Superior Court, Unlimited Jurisdiction, Los Angeles County, CA

Joann Hardeman, individually and as successor-in-interest to the Estate of Leonard Lee Hardeman v. American Honda Motor Co., Inc., et al., Case No. BC 393891, Superior Court, Unlimited Jurisdiction, Los Angeles County, CA | Keller, Fishback & Jackson, LLP, 18425 Burbank Blvd, Ste 610, Tarzana, CA 91356, 818.342.7442 | Advantage Court Reporters & Video Services LLC, 18401 Burbank Blvd, Tarzana, CA 91356, 818. 609.9803 |
| | | 9/1/2010 | Keith Erschen and Susan Erschen v. Honeywell International, Inc., et al., Case #08-L-195, Circuit Court, McLean County, IL

Michael Endres, Linda Endres, Stan Lorrance, and Sandy Lorrance v. Honeywell International, Inc., et al., Case #09-L-124, Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701, 309.828.5099 | Fink & Carney, Reporting & Video Services 39 W 37th St, NY, NY 10018, 800.NYC.FINK |
| 5. | Cvitkovich, Steven | 4/20/1992 | Joseph Bromberg and Florence Bromberg, his wife, v. Abex Corp., Docket #91-90011 CA 42, | David Lipman, Esq., 5915 Ponce DeLeon Blvd, Ste 44, Coral Gables, FL 33146; | Cefaratti, Rennillo & Matthews, Cleveland, OH; 216/ 687-1161; Cefaratti, Rennillo & Matthews, Akron, |

RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | David M. Lipman: 280054, Circuit Court, 11th Judicial Circuit, Dade County, General Jurisdiction Dept., FL | 305.662.2600 | OH; 216.253.8119 |
| 6. | Fasman, Steven | 1/23/1998 | Jerry Burgess, as Special Administrator of the Estate of Delbert Burgess, deceased, and Frances Burgess vs. Illinois Central Railroad Company, et al., Case #95-L-93, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279, geshwilms@frontiernet.net |
| | | 10/1/1999 6/9/2000 | George R. Douglas and Bonnie Morales Douglas v. Allied-Signal, Inc., et al., #93-9533, Div. K, Section "14", Civil District Court, New Orleans, LA | Russel & Rousel, 1710 Cannes Dr, LaPlace, LA 70068 | Esquire Deposition Services, 216 E 45th St, 8th Fl, NY, NY 10017; 800.662.3287; Job# 99850 |
| | | 9/28/2001 11/9/2001 | Orville Kiper and Bessie Kiper v. Abex Corporation, et al., Case #00 L 211, In the Circuit Court of the Eleventh Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 12/10/2004 | Merlon Dukes and Doris Dukes v. Pneumo Abex Corporation, et al., #04 L 79, Circuit Court, 11th Judicial Circuit, County of McLean, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Fink & Carney Reporting & Video Services, 39 W 37th St, NY, NY 10018, 800.NYC.FINK |
| | | 8/29/2006 | Karen K. Reese, Individually and as Special Administrator of the Estate of Ralph R. Reese, Jr., Dec. v. Pneumo Abex Corporation, et al., Case #04 L 51, 11th Judicial Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 2/26/2008 | Margaret Murphy and Gary Murphy v. Honeywell International, et al., Case #07 L 111, 11th Judicial Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin & Kelley, 207 W Jefferson, Bloomington, IL 61701 | Fink & Carney, Reporting & Video Services 39 W 37th St, NY, NY 10018, 800.NYC.FINK |
| | | 6/3/2008 6/4/2008 | Betty Scott, Individually and as Special Administrator of the Estate of Robert C. Scott, Dec. v. Pneumo Abex Corporation, et al., Case #05 L 18, 7th Judicial Circuit Court, Morgan County, IL | James Wylder, Esq., Wylder Corwin & Kelley, 207 W Jefferson, Bloomington, IL 61701 | Amy S. Stidham, CSR, Lic. #084-003446 Official Court Reporter, Morgan County Courthouse, 300 West State Street, Jacksonville, IL 62650 |

31

RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | 11/10/2008 | Robert Poole v. Pneumo Abex LLC. et al., Case #06-L-9, Circuit Court, 7th Judicial Circuit, Morgan County, IL | James Wylder, Esq., Wylder Corwin & Kelley, 207 W Jefferson, Bloomington, IL 61701, 309.828.5099 | Fink & Carney, Reporting & Video Services 39 W 37th St, NY, NY 10018, 800.NYC.FINK |
| | | 2/25/2009 2/26/2009 | Roger Holmes, Special Administrator of the Estate of Joan Holmes, Deceased v. Pneumo Abex Corporation, et al, Case #06-L-57, 11th Judicial Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 4/21/2009 4/22/2009 | Juanita Rodarmel and Baxter Rodarmel v. Pneumo Abex Corporation, et al., Case No. 08 L 132, 11th Judicial Circuit, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 1/29/2010 | Jayne Menssen and David Menssen v. Pneumo Abex Corporation, et al., Case No. 09 L 71, 11th Judicial Circuit, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 2/3/2010 | Gary Brandt and Deborah Brandt v. Sprinkmann Sons Corporation of Illinois, et al., Case No. 05 L10, 11th Judicial Circuit, Logan County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Official Court Reporter, 601 Broadway, Lincoln, IL 62656 |
| | | 6/28/2010 6/29/2010 | Norman Shoopman and Sharon Shoopman, Case No. 09 L 159, Larry Dunham and Mary Dunham, Case No 08 L 158 v. Honeywell International, Inc., et al., Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 9/2/2010 | John Yates and Kathleen Yates v. Pneumo Abex Corporation, et al., No. 08 L 188, Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Fink & Carney, Reporting & Video Services, 39 W 37th St, NY, NY 10018; 800.NYC.FINK |
| | | 9/30/2010 | Janet Shipley and James Shipley v. Pneumo Abex Corporation, et al., No. 10 L 38, Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 | Crossroads Court Reporting, 9733 Sable Ridge Lane, Terre Haute, IN 47802, 812.299.0442 |
| 7. | Feierabend, E. H. | 4/16/1987 | Barbara A. King, Administratrix of the Estate of Ramon I. King, Deceased, on behalf of the Estate of Ramon I. King, Deceased, and Barbara A. | Sikov and Love, 14th Floor, Lawyers Bldg., 428 Forbes Ave, Pittsburgh, PA 15219 1684; 412. 261. 4202 | Lana M. Byer, Court Reporting Service, 303 Frick Building, Pittsburgh, PA 15219; 412.263.2544 |

32

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | King, Individually and in her own right v. Napa of Pittsburgh, Inc., et al., Civil Division #GD 86-00139, Court of Common Pleas, Allegheny County, PA | | |
| 8. | Francis, William H. | 7/15/1985 | Martha Gray and Thomas Gray v. Raymark Industries, Inc., et al., Case #83-C-724, United States District Court, Eastern District of WI | Thomas W. White, Esq., Henderson & Goldberg, 1612 Frick Building, Pittsburg, PA 15212 | Milwaukee Reporters Associated, 5120 W. Blue Mound Road, Milwaukee, WI 53208; 414.771.5253; Email jean@ milwaukeereporters.com |
| 9. | Grace, Peter | 11/7/2001 | Orville Kiper and Bessie Kiper v. Abex Corporation, et al., Case #00 L 211, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701

James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578; 309.888.5279 geshwilms@frontiernet.net |
| 10. | Griffith, Arvon M. | 6/18/1996 | Corinne Jerome v. Asbestos Corp., LTD, et al., Docket #K95-1354, United States District Court, MD | Goodman Meacher & Enoch, 111 W. Charles St, Baltimore, MD 21201 | Sperling & Barraco, Inc., Registered Professional Reporters, 53 Orange St; Asheville, NC 28801; 704.253.2744 |
| 11. | Grinter, Donald | 9/21/2001 11/2/2001 | Orville Kiper and Bessie Kiper v. Abex Corporation, et al., Case #00 L 211, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701

James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578; 309.888.5279 geshwilms@frontiernet.net |
| | | 5/30/2008 6/3/2008 | Betty Scott, Individually and as Special Administrator of the Estate of Robert Scott, Deceased v. Pneumo Abex, LLC, et al., Case #2005-L-18, 7th Judicial Circuit, Morgan County, IL | James Wylder, Esq., 207 W Jefferson, Bloomington, IL 61701 | Amy S. Stidham, CSR, RMR, Official Court Reporter, Morgan County Courthouse 300 West State Street Jacksonville, IL 62650 |
| | | 2/19/2009 2/20/2009 | Roger Holmes, Special Administrator of the Estate of Joan Holmes, Deceased v. Pneumo Abex Corporation, et al, Case #06-L-57, 11th Judicial Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Kathy L. Fulks, CSR, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247, Lic. #084-002020, 309.888.5247 |
| | | 4/16/2009 4/17/2009 | Juanita Rodarmel and Baxter Rodarmel v. Pneumo Abex Corporation, et al., Case No. 08 L 132, 11th Judicial Circuit, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 1/27/2010 | Jayne Menssen and David Menssen v. Pneumo Abex Corporation, et al., Case No. 09 L 71, 11th Judicial | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, |

33

RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | Circuit, McLean County, IL | Bloomington, IL 61701 | IL, 309.888.5247 |
| | | 2/2/2010 | Gary Brandt and Deborah Brandt v. Sprinkmann Sons Corporation of Illinois, et al., Case No. 05 L10, 11th Judicial Circuit, Logan County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Official Court Reporter, 601 Broadway, Lincoln, IL 62656 |
| | | 6/17/2010 6/18/2010 6/21/2010 | Norman Shoopman and Sharon Shoopman, Case No. 09 L 159, Larry Dunham and Mary Dunham, Case No 08 L 158 v. Honeywell International, Inc., et al., Circuit Court, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| 12. | Indelicato, Albert D. | 11/20/2009 | Lori Ferrell, Individually and as Personal Representative of the Estate of Milton M. Ferrell, Jr., et al., Case No. 08-69204, Circuit Court, 11th Judicial Circuit, Miami-Dade County, FL | Ferraro Law Firm, 4000 Ponce de Leon Blvd, Ste 700, Miami, FL 33146 | Annette M. Montalvo, CSR, RMR, Esquire Deposition Solutions, 99 Summer Street, Ste 804, Boston, MA, 800.539.6398 |
| 13. | Kenfield, Dexter L. | 11/9/2001 | Orville Kiper and Bessie Kiper v. Abex Corporation, et al., Case #00 L 211, In the Circuit Court of the Eleventh Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701  James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan B. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578; 309.888.5279 geshwilms@frontiernet.net |
| | | 1/28/2004 | George Adams, et al. v. A.W. Chesterton Company, et al., Case #CV 2000 32, Circuit Court, Little River County, AR | Motley Rice, PO Bx 1792, Mt Pleasant, SC 29465; 843/216-9000 | Priority-One Court Reporting Services, Inc., 25B Vreeland Road, Ste 301, Florham Park, NJ 07932, 718.983.1234, www.veritext.com |
| | | 2/20/2004 | Jimmie A. Mills v. American Optical Corp., et al., Cause #DC-02-259, District Court, Duval County, 229th Judicial District, TX | Larry Walton, Esq., Russell L. Cook, Jr. & Assoc., 1401 McKinney, Ste 1800, Houston, TX 71010; 713/650 1221 | Mark A. Miller, Texas CSR #1190, Nell McCallum & Assoc., Firm Reg #243, TX |
| | | 3/26/2004 | Ann C. Jones and The Rev. George. v. A.W. Chesterton Company, et al., Case #03-3367, Div. 6(0), Civil District Court, Orleans, LA | Martzell & Bickford, 338 Lafayette St, New Orleans, LA 70130; 504/581 9065 | Atkinson-Baker, Inc., 330 N Brand Blvd, Ste 250, Glendale, CA 91203; 800.288.3376 |
| | | 7/20/2004 7/21/2004 | Elbert Davidson v. Burns International Services Corp., et al., Case #429088, Superior Court, Unlimited Jurisdiction, San Francisco County, CA | Paul, Hanley & Harley; 1608 Fourth St, Ste 300, Berkeley, CA. 94710; 510/ 559- 9980 | Ludwig Klein Reporters & Video, Inc., 10868 Kling St, Toluca Lake, CA 91602; 800.540.0681 |
| | | 11/4/2004 | Donald Gendreau and Laura Gendreau. v. | Cheryl White, Esq., Brent Coon & Assoc., | Aiken and Welch, Certified Shorthand Reporters, 1 |

RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | American Asbestos, Inc., et al., Case #RG04-35013, Superior Court, Alameda County, CA | 44 Montgomery St, Ste 800, San Francisco, CA 94104; 415/ 489-7420 | Kaiser Plza, Ste 505, Oakland, CA 94612; 510.451.1580 |
| | | 1/10/2005 | Regina Bolden, Individually and as Administratrix of the Estate of Arthur Bolden v. Abex Corp., et al., Index #03-18589, Supreme Court, New York County, NY | Jerome H. Block, Esq., Levy Phillips & Konigberg, 800 3rd Ave, 13th Fl, NY, NY 10022; 212/605-6200 | Priority-One Court Reporting Services, Inc., 25B Vreeland Road, Ste 301, Florham Park, NJ 07932, 718.983.1234, www.veritext.com |
| | | 9/7/2005 | John Watkins and Ruth Watkins v. Pneumo Abex Corporation, et al., #05 L 08, Circuit Court, 11th Judicial District, McLean County, IL | James Wylder, Esq., 207 W Jefferson, Bloomington, IL 61701 | Fink & Carney, Reporting & Video Services, 39 W 37th St, NY, NY 10018; 800.NYC.FINK |
| | | 12/7/2005 | Flora Franklin and Johnny Franklin v. General Motors Corp., et al., Case #04-CI-00274, Anderson Circuit Court, KY | Joseph Satterley, Esq., Sales, Tillman, Walbaum, Catlett & Satterley, 1900 Waterfront Plza, 325 W. Main St, Louisville, KY 40402; 502/589-5600 | Barrister Reporting Service, Inc., 120 Broadway, NY, NY 10271; 212.732.8066 |
| | | 12/16/2005 | George Adams, et al. v. A.W. Chesterton Company, et al., Case #CV 2000 32, Circuit Court, Little River County, AR | Motley Rice, PO Bx 1792, Mt Pleasant, SC 29465; 843/216-9000 | A. William Roberts, Jr. & Assoc., 46-A State St, Charleston, SC 29401; 800.743.DEPO |
| | | 2/16/2006 | In Re: All Cases Set by SimmonsCooper, LLC, February 21, 2006 Trial Docket v. Pneumo Abex, John Crane and Arvinmeritor, et al., Circuit Court, 3rd Judicial Circuit, Madison County, IL | SimmonsCooper LLC, 707 Berkshire Blvd., P.O. Box 521, East Alton, Illinois 62024, 618.259.2222, info@simmonscooper.com | Pohlman USA Court Reporting, One Metropolitan Sq, Ste 2040, St Louis, MO 63102; 314.421.0099; www.pohlmanreporting.com |
| | | 3/2/2006 | In Re: Personal Injury Asbestos Litigation, Multi Case Filing: Edward A. Adams, Sr., et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000342; Donald J. Barner, et al. v. ACandS., Inc., et al., Consolidated #24-X-04-001105; Donald Conyers, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000346; Charles Allen, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000325; Ollie W. Harlow, et al. v. ACandS., Inc., et al., Consolidated #24-X-05-000326; Edna M. Adams, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000345; Alphonso L. Adams, et al. v. ACandS., Inc., et al., Consolidated #24-X-05-000338; | James Ledlie, Esq., Motley Rice, PO Bx 1792, Mt Pleasant, SC 29465; 843/ 216-9000; Peter T. Nicholl, Esq., 36 S. Charles St, Ste 1700, Baltimore, MD 21201; 410/244-7005 | Evans Reporting Service, 2 N Charles St, Baltimore, MD 21201; 410.727.7100; www. EvansReporting.com |

35

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|-----|---------|------|------|---------------------|----------------|
| | | | Frederick B. Bennett, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000339; Circuit Court, Baltimore City, MD | | |
| | | 5/15/2006 | In Re: Personal Injury Asbestos Litigation, Multi Case Filing: Edward A. Adams, Sr., et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000342; Donald J. Earner, et al. v. ACandS., Inc., et al., Consolidated #24-X-04-001105; Donald Conyers, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000346; Charles Allen, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000325; Ollie W. Harlow, et al. v. ACandS., Inc., et al., Consolidated #24-X-05-000326; Edna M. Adams, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000345; Alphonso L. Adams, et al. v. ACandS., Inc., et al., Consolidated #24-X-05-000338; Frederick B. Bennett, et al. v. ACandS, Inc., et al., Consolidated #24-X-05-000339; Circuit Court, Baltimore City, MD | James Ledlie, Esq., Motley Rice, PO Bx 1792, Mt Pleasant, SC 29465; 843/216-9000 | Fink & Carney Reporting & Video Services, 39 W 37th St, NY, NY 10018; 800.NYC.FINK |
| | | 8/18/2006 8/21/2006 | Karen K. Reese, Individually and as Special Administrator of the Estate of Ralph R. Reese, Jr., Dec. v. Pneumo Abex Corporation, et al., Case #04 L 51, 11th Judicial Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 9/6/2006 | Christopher Pounds and Teresa Pounds v. A.W. Chesterton Company, et al., Case #05-447748, Superior Court, San Francisco County, CA | Levin Simes Kaiser & Gornick, LLP, 44 Montgomery Street, 36th Fl, San Francisco, CA 94104, 877.LSKG-LAW | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 6/13/2007 | David Vanderhyde and Pilar Vanderhyde v. A.W. Chesterton Company, et al., Case #CGC-07-274037, Superior Court, San Francisco County, CA | Levin Simes Kaiser & Gornick, LLP, 44 Montgomery Street, 36th Fl, San Francisco, CA 94104, 877.LSKG-LAW | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 10/4/2007 | Eugene McClarty and Donna McClarty v. Lone Star Industries, Inc., et al. Case #RG05 210545, Superior Court, Alameda | Brent Coon & Associates, 44 Montgomery St, Ste 800, San Francisco, CA 94104 | Tooker & Antz, Court Reporting & Video Services, 350 Sansome St, Ste 700, San Francisco, CA 94104, 415.392.0650 |

36

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | County, CA | | |
| | | 11/15/2007 | Catherine DeFrancisco, Executrix of the Estate of Pasquale DeFrancisco of the Estate of Catherine DeFrancisco in her own right, v. Owens Illinois, Inc., et al., Docket #L-1127-05, Superior Court, Law Div., Camden County, Civil Action, NJ | Michael A. Galpern, Esq., Locks Law Firm, LLC, 457 Haddonfield Road, Ste 500, Cherry Hill, NJ 08002 | Knipes-Cohen-Veritext Court Reporting, 400 Market St, Phila, PA 19106; 215.928-9300 |
| | | 1/15/2008 | Lorraine Jamrom, An Individual v. A.W. Chesterton Company, et al., Case #07-C-795 Circuit Court, Kanawha County, WV; In Re: Asbestos Personal Injury Litigation, January 2008 Exigent Trial Group, Master File #03-C-0600, Kanawha County Circuit Court, WV | Robert Pierce & Associates 2500 Gulf Tower, 707 Grant Street, Pittsburgh, PA 15219, 412.281.7229. | Henjim Goucher Litigation Services, 12621 Featherwood Drive, Ste 140, Houston, TX 77034 |
| | | 2/28/2008 | Alva Ransford and Ora Myrtle Ransford v. AC&S, et al., Case #CGC 07-274342, Superior Court, Unlimited Jurisdiction, San Francisco County, CA | Harowitz & Tigerman, 450 Sansome Street, 3rd Fl, San Francisco, CA 94111, 415. 788.1588. | Tooker & Antz Court Reporting & Video Services, 350 Sansome Street, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 5/7/2008 | Michael Bradford and Terry Bradford v. A.W. Chesterton Company, et al., Case #BC 368 842, Superior Court, Unlimited Jurisdiction, Los Angeles County, CA | Keller, Fishback & Jackson, LLP, 28720 Roadside Drive, Ste 201Agoura Hills, CA 91301, 818.879.8033 | Karen Kay, CSR 3862 of Ludwig Klein Reporters, 10868 Kling Street, Toluca Lake, CA 91602, lois@ludwigklein.com, 800.540.0861 |
| | | 6/9/2008 | Betty Scott, Individually and as Special Administrator of the Estate of Robert C. Scott, Dec. v. Pneumo Abex Corporation, et al., Case #05 L 18, 7th Judicial Circuit Court, Morgan County, IL | James Wylder, Esq., Wylder Corwin & Kelley, 207 W Jefferson, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 8/5/2008 | In Re: Complex Asbestos Litigation, Case, #828684, Superior Court, San Francisco County, CA | Harowitz & Tigerman, 450 Sansome Street, 3rd Fl, San Francisco, CA 94111, 415.788.1588. | Tooker & Antz Court Reporting & Video Services, 350 Sansome Street, Ste 700, San Francisco, CA 94104, 415.392.0650 |
| | | 8/14/2008 | Lynda Daly and Michael Daly, her husband, v. Arvinmeritor, Inc., et al, Case #07-19211, 17th Judicial Circuit Court, Broward County, FL | The Ferraro Law Firm, P.A., 4000 Ponce de Leon Blvd., Ste 700, Miami, FL; 305.375.0100 | Huseby, Inc., 1230 W. Morehead St., Ste 408, Charlotte, NC 28208, 704.333.9889, Job #31387 |
| 14. | Kleeschulte, David Gene | 8/11/1988 | Dee Mahan, Individually and as Personal Representative of the Heirs | Joseph F. Bruegger, Esq., Bruegger & McCullough, 9400 N | Tyler Eaton Morgan Nichols & Pritchett, 1819 Fifth Ave N, 1 Federal Pl, Birmingham, |

37

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | . | and Estate of Ross D. Mahan, Dec. v. Great Southwest Railroad Inc., et al., Civil Action #CA 4-85-22K, United States District Court, Northern District, Ft Worth Div., TX | Central Expressway St. 1305, Dallas, TX 75231; 214. 365.9000 | AL 32503; 205.252.9152 |
| 15. | Mallory, Charles B. | 6/11/1984 | Dorothy St. Jacque, et al. v. John-Manville Corp., et al., Case #C-137465, Superior Court, Los Angeles County, CA | Greene Broillet & Wheeler, 100 Wilshire Blvd., 21st Fl, Santa Monica, CA 90401; 310.576.1200 | Alderson Reporting Company, Inc., 20 F St, NW, Washington, DC 20001; 202.628.9300 |
| 16. | Manghi, Gene K. | 6/24/1996 | Corinne Jerome v. Asbestos Corp., LTD, et al., Docket #K95-1354, United States District Court, MD | Goodman Meacher & Enoch, 111 W. Charles St, Baltimore, MD 21201 | Evans Reporting Service, 7 N Calvert St # 705, Baltimore, MD 21202-2251, 410.727.7100 |
| 17. | Merkel, Timothy F. | 8/7/2006 | Rodolfo Colella and Maria Colella v. Amchem Products, Inc., et al., Index #103894-05; Alfred D'Ulisse and Margaret D'Ulisse v. Amchem Products, Inc., et al., Index #113838-04, In Re: New York Asbestos Litigation: Supreme Court, New York County, NY | Weitz & Luxenberg, 180 Maiden Lane, NY, NY 10038; 212.558.5500 | Priority-One Court Reporting Services, Inc., 25B Vreeland Road, Ste 301, Florham Park, NJ 07932, 718.983.1234, www.veritext.com |
| | | 8/9/2006 | In Re: All Cases Set by SimmonsCooper, LLC, 8/14/2006 and 9/18/2006 Trial Dockets, Circuit Court, 3rd Judicial Circuit, Madison County, IL | SimmonsCooper LLC, 707 Berkshire Blvd., P.O. Box 521, East Alton, Illinois 62024, 618.259.2222, info@simmonscooper.com | Pohlman USA Court Reporting, 1 Metropolitan Sq, Ste 2040, St Louis, MO 63102; 314.421.0099; www.pohlmanreporting.com |
| | | 9/26/2006 | Linda K. Barker, Executrix of the Estate of John E. Barker, Jr. Dec. and Linda K. Barker, in her own right v. Pneumo Abex LLC, successor by merger to Pneumo Abex Corp., Case #05-C-2680, In Re: Asbestos Personal Injury, Mass Litigation Panel September 2006 Trial Group, Master File #03-C-0600, Kanawha County Circuit Court, WV | Goldberg Persky & White, 1030 5th Ave, Pittsburgh, PA 15219; 412.471.3980 | Morse, Gantverg & Hodge, Inc., 1 Biglow Square, Ste 719, Pittsburgh, PA 15219; 412.281.0189 |
| | | 11/29/2006 | In Re: All Cases on the December 11, 2006 SimmonsCooper, LLC Docket vs. Pneumo Abex, et al., Circuit Court, 3rd Judicial Circuit, Madison County, IL; Neil Joseph Day, Individually and as Personal Representative of the Estate of Debra Rubene Day v. Saberhagen Holdings, Inc., et al., #05-2-01654-0SEA, Superior Court, King County, WA | SimmonsCooper LLC, 707 Berkshire Blvd., P.O. Box 521, East Alton, Illinois 62024, 618.259.2222, info@simmonscooper.com; David Frockt, Esq., Bergman & Frockt, 614 1st Ave, 4th Fl, Seattle, WA 98104; 206.957.9510 | Pohlman USA Court Reporting, 1 Metropolitan Sq, Ste 2040, St Louis, MO 63102; 314.421.0099; www.pohlmanreporting.com |

RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | 3/12/2007 | In Re: All SimmonsCooper, LLC vs. Pneumo Abex, et al., Circuit Court, 3rd Judicial Circuit, Madison County, IL; In Re: Asbestos Litigation, Metzger Trial Group: Wilda Metzger, Case #05C-07-109; William Losi, Case #05C-09-214; Eleanor Losi, Case #06C-06-011; Amey Coston, Case #05C-05-167; Dana Bandin, Case #05C-07-206; Gary Gerdes, Case #06C-07-047; Vera Campbell, Case #05C-06-083; Maudie Powell, Case #05-10-021; Dorothy Snell, Case #05C-05-341; Robert Overby, Case #05C-05-329; Phillip Koontz, Case #05C-06-216; Harry Nalbandian, Case #05C-08-148; William Tofaute, Case #06C-01-016; Antoinette Vortrieda, Case #05C-05-247; Donald Barker, Case #05C-08-262; Wilma Blackwell, Case #05C-12-223; Francisco Vigil, Case #06C-02-028; Isaiah Fenner, Case #05C-05-274; Betty Gill, Case #05C-11-242, v. A.T. Callas Company, et al., Superior Court, New Castle County, DE | SimmonsCooper LLC, 707 Berkshire Blvd., P.O. Box 521, East Alton, Illinois 62024, 618.259.2222, info@simmonscooper.com; Joseph Biden, III, Esq., Bifferato, Gentilotti, Biden & Balick, 1308 Delaware Ave, PO Box 2165, Wilmington, DE 19899; 302.429.1900 | Henjum Goucher Litigation Services, 2501 Oak Lawn Ave, Ste 435, Dallas, TX USA 75219; 888.656.DEPO |
| | | 2/19/2008 | Robert Haun and Barbara Haun v. A.W. Chesterton, et al., Case RG07339599, Superior Court, Unlimited Jurisdiction, Alameda County, CA | Kazan, McClain, Lyons, Greenwood & Harley, PLC, 171 Twelfth Street 12th Fl, Oakland, CA 94607, 877.995.6372 | Aiken and Welch, Certified Shorthand Reporters, 1 Kaiser Plza, Ste 505, Oakland, CA 94612; 510.451.1580; |
| | | 5/15/2008 | Jefferson Riley, Case #24-X-06-000753; John Schylaske, Case #24-X-06-000783 v. AC and S, Inc., et al., Baltimore City Circuit Court, MD | Mark Dumler, Esq., Parker, Dumler & Kiely, LLP, 36 S. Charles Street, Charles Center S., Ste 2200, Baltimore, MD 21201, 410.625.9330 | Evans Reporting Service, 2 N Charles St, Baltimore, MD 21201; 410.727.7100; www.EvansReporting.com |
| | | 9/17/2008 | Michael Joseph Kolasinski v. ACME Liquidating Corp., successor in interest to Lipe Automation Corp. f/k/a Lipe-Rollway Technology, Inc., et al., Index #I2008-405, Supreme Court, Erie County, 8th Judicial District, NY | John P. Comerford, Esq., Lipsitz & Ponterio LLC, 135 Delaware Ave, 5th Fl, Buffalo, NY 14202-2415, 716.849.0701 | Priority-One Court Reporting Services, Inc., 25B Vreeland Road, Ste 301, Florham Park, NJ 07932, 718.983.1234, www.veritext.com |
| | | 10/7/2009 | Maria Santana v. Bondex International, Inc., et al., Case No. 08-67301-CA-42; | Jonathan Ruckdeschel, Esq., Ruckdeschel Law Firm, 5162, Dorsey | Samara J. Zink, Court Reporter, Esquire Solutions, 401 East Pratt Street, Ste 425, |

39

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | Lori Ferrell, Individually and as Personal Representative of the Estate of Milton M. Ferrell, Jr., et al., Case No. 08-69204, Circuit Court, 11th Judicial Circuit, Dade County, FL | Hall Dr, Ste 201, Ellicott City, MD 21042, 410.884.7825<br><br>Case A. Dam, Esq., Ferraro Law Firm, 4000 Ponce de Leon Blvd, Ste 700, Miami, FL 33146 | Baltimore, MD 21202, 800.539.6398 |
| | | 12/7/2009 | Jimmy L. Toole v. Georgia-Pacific, LLC, et al., Civil Action File No. 2009-V-113, Superior Court, Miller County, GA | Christian H. Hartley, Esq., 309 Wingo Way, Ste 103, Mt. Pleasant, SC 29464, 843.647.2431<br><br>Buck Law Firm, 1050 Crown Pointe Parkway, Ste 940, Atlanta, GA 30338, 678. 338.4999 | D'Amico Gershwin, Inc, Certified Court Reporters 11475 West Rd, Roswell, GA 30075, 770.645.6111, office@atlantacourtreporter.com |
| 18. | Nelson, Robert E. | 6/1/1984 | Mary Zitis and Ina Friedman. et als. v. General Motors Corp., et al., Docket #s. L-11634-77, 35859-77, Superior Court, Law Div., Bergen County, NJ | Karl Asch, Esq. | Breslin, Herten & Le Porte, Esqs., (Lorraine S. Nitti) |
| 19. | Parker, Francis Richard | 9/27/1984 | Dorothy St. Jacque, et al. v. John-Manville Corp., Civil Action #C137465, Superior Court, Los Angeles County, CA | Greene Broillet & Wheeler, 100 Wilshire Blvd., 21st Fl, Santa Monica, CA 90401; 310.576.1200 | Zahn, Hall & Zahn, LTD, 219 W. Blue St, Wainwright Bldg, Norfolk, VA 23510; 804.627.6554 |
| 20. | Pelligrino, Allison | 9/3/1987 | Renee Egan v. Raybestos-Manhattan, et al., #838908; George Leo Egan, Jr. v. Raybestos-Manhattan et al., Consolidated, #835875, Superior Court, San Francisco County, CA | Robert M. Brown, Esq., Brown & Finney, 1676 North Carolina Blvd, Ste 680, Walnut Creek, CA 94596 | Pizzotti & Jarnagin, 5776 Stoneridge Mall Rd, Ste 178, Pleasanton, CA 94588, 925.416.1800 |
| 21. | Perez, Joseph | 5/26/1994 | Abernathy, et al. v. AC & S, Inc., et al., Consolidated #s. A-920,967-C; A-920,961-C; A-930,553-C; A-930,810-C, District Court, Orange County, 128th Judicial District, TX | Motley Rice, PO Bx 1792, Mt Pleasant, SC 29465; 843.216.9000 | Hamilton-Legato, Deposition Centers, 2560 Crooks Rd, Ste 1000, Troy, MI 78084-4703; 810.244.9700 |
| | | 10/30/1990 | Barbara Kozakiewicz, as Executrix of the Estate of the Late Frank Kozakiewicz, and Barbara Kozakiewicz, Individually v. Abex Corp., File #89-3102(AMW), U.S. District Court, NJ | Wilentz, Goldman & Spitzer, 90 Woodbridge Center Dr, Ste 900 Box 10, Woodbridge, NJ 07095; 732.636.8000 | Brody & Geiser, Certified Shorthand Reporters, 77 Hamilton Ave, Fords, NJ 08863; Job #010308 |
| | | 1/17/1997 | Mary Claxton, Special Administrator of the Estate of John W. Claxton, dec v. Owens-Corning Fiberglass Corporation, et al., Case #95 L 224, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Esquire Deposition Services, 216 E 45th St, 8th Fl, NY, NY 10017; 800.662.3287; Job# 99850 |

40

RESPONSES OF DEFENDANT PNEUMO ABEX LLC, SUCCESSOR IN INTEREST TO ABEX CORPORATION, TO PLAINTIFFS' GENERAL ORDER 12 STANDARD INTERROGATORIES TO FRICTION DEFENDANTS

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | 1/23/1998 | Jerry Burgess, as Special Administrator of the Estate of Delbert Burgess, deceased, and Frances Burgess vs. Illinois Central Railroad Company, et al., Case #95-L-93, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| 22. | Perniconi, Giovanna (Nina) | 5/21/1996 | Lowell Sherer and Mary Sherer v. Owens Corning Fiberglas and Abex Corporation, #92-L-69, 11th Judicial Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Woodward, CSR, Official Court Reporter, 413 Law & Justice Center, Bloomington, IL Lic. #084-002265 |
| | | 1/29/1998 | Jerry Burgess, as Special Administrator of the Estate of Delbert Burgess, deceased, and Frances Burgess vs. Illinois Central Railroad Company, et al., Case #95-L-93, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Whitwood, CSR, CSR # 084-002265, Official Court Reporter, 525 Law & Justice Center, Bloomington, IL, 309.888.5247 |
| | | 3/16/2001 | Betty Calhoun, Individually and as Special Administrator of Estate of George L. Calhoun, dec v. Pneumo Abex Corporation, et al., Case# 99 L 96; Circuit Court, 10th Judicial Circuit, Peoria County, IL; Imogen Chase, Individually and as Special Administrator of the Estate of Carl Chase, dec v. Pneumo Abex Corporation, et al., Case #99 L 196, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701, 309.828.5044<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701, 309.828.5099 | Barkley Court Reporting, 22 W. Washington St, 15th Fl, Chicago, IL 60602, 800.222.1231 |
| | | 7/26/2001 | Larry Monari, et al. v. Owens-Corning, et al., #98 L 443, 10th Judicial Circuit Court, Peoria County, IL | James Wylder, Esq., 207 W Jefferson, Bloomington, IL 61701 | Barkley Court Reporters, 2040 Main Street, Ste 250, Irvine, CA 92614, 877.512.1234, barkleyoc@barkley.com |
| 23. | Persbacker, Victor L. | 3/24/1992 | Delong Trial Group, C.A #88 C-No-110; West Trial Group, C.A. #89C-SE-123; Lukowski Trial Group, C.A. #87-C-JN-84; Kenney Trial Group, C.A. #88C-AU-70; Superior Court, New Castle County, DE | Robert Jacobs, Esq., Jacobs & Crumplar, 2E 7th St, Ste 400, Wilmington, DE 302/476-2523 | Scribes, Inc., CT |
| | | 5/20/1992 | Betty Malcom, Individually, and as Special Administrator of the Estate of Orville Malcom, deceased, v. Brakegate, Lt., | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., | Niziankiewicz & Miller, 972 Tolland Street, East Hartford, CT 06108-1533, 860.291.9191 |

41

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | et al., Case #89 L 190, 11ᵗʰ Judicial Circuit Court, McLean County, IL | Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | |
| | | 5/21/1996 | Lowell Sherer and Mary Sherer v. Owens Corning Fiberglas and Abex Corporation, #92-L-69, 11ᵗʰ Judicial Circuit Court, McLean County, IL. | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Diane K. Woodward, CSR, Official Court Reporter, 413 Law & Justice Center, Bloomington, IL Lic. #084-002265 |
| | | 3/29/1996 | Merion Dukes and Doris Dukes v. Brakegate, Ltd., et al., Case #91 L 70; Mary Hayes and Lee Hayes v. Grefco, Inc., et al., Case #92 L 62; Donna Murray, Individually, and as Administrator of the Estate of Robert Murray, deceased, v. Abex Corporation, et al., Case #89 L 199, Circuit Court, 11ᵗʰ Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Fink & Carney, Reporting & Video Services, 39 W 37ᵗʰ St, NY, NY 10018, 800.NYC.FINK |
| | | 2/23/1999 | Linda Sylvester v. Owens Corning, et al.; Case # 98 L 217, James W. Brewer, Sr. and Judy Brewer v. Owens Corning, et al., Case #98 L 56; Greg Brittin and Steve Brittin, Co-Special Representatives of the Estate of Darrell Brittin, dec v. Owens Corning, et al., Case #98 L 28; Stanley Emberton and Connie Emberton v. Owens Corning, et al., Case # 98 L 147; Claudette Folkes, Special Administrator for the Estate of T.J. Pruitt, dec v. Owens Corning Fiberglas Corporation, et al., Case # 98 L 207; Donald Piercy, Special Administrator for the Estate of Wilha Dietrich, dec. v. Owens Corning Fiberglas Corporation, et al., Case # 98 L 206; Darrell Shaw and Darlene Shaw v. Owens Corning, et al., Case # 98 L 41; Deborah Smith, Individually and as Special Administrator of the Estate of Donna Smith, dec v. Owens Corning Fiberglas Corporation, et al., Case # 98 L 37; Edward Totterer v. Owens Corning, et al., Case # 98 L 82; Robert Winstead and Josephine Winstead v. Owens | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Niziankiewicz & Miller Reporting Services, 972 Tolland Street, East Hartford, CT 06108, 888.565.9191 |

42

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|---|---|---|---|---|---|
| | | | Corning, et al., Case # 98 L 119; Larry Monari and Sandy Monari v. Owens Corning, et al., Case # 98 L 443; Circuit Court, 11th Judicial Circuit, McLean County, IL | | |
| 24. | Rozek, Robert Henry | 12/6/1983 | Dorothy St. Jacque, et al., v. John-Manville Corp., et al., Civil Action #C-137 465, Superior Court, Los Angeles County, CA | Greene Broillet & Wheeler, 100 Wilshire Blvd, 21st Fl, Santa Monica, CA 90401; 310.576.1200 | Knipes-Cohen-Veritext Court Reporting, 400 Market St, Phila, PA 19106; 215.928.9300 |
| 25. | Siedlecki, Jerry | 12/17/1996 | Russell Allen, et als. v. American Petrofina, Inc., et al., Consolidated #s B-126,986; A-144,426-A; A-142,945; A-144,426; A-134,614; B-132,431, E-150,405, B-142,345, A-141,797, E-153,066, B-141,242, A-153,063, B-150,802, B-148,523, E-149,835, E-141,216, E-144,963, A-152,338, E-144,117, E-146,212, 96-3348-E, B-138,645, B-149,788, A-155,544, A-151,231, D-143,616, D-128,522, A-140,498, District Court, Jefferson County, 60th Judicial District, TX | Herschel Hobson, Esq., Joseph Blanks, Esq., 2190 Harrison Ave, Beaumont, TX 77701; Chris Quinn, Esq., Reaud, Morgan & Quinn, 801 Laurel St, Beaumont, TX 77701 | Starla Lee Foust, CSR, Charlotte Smith Reporting, Inc., 235 Orleans St., The Kyle Bldg, Beaumont, TX 77701-2399; Video Operator/ Technician: Warriene M. Flatt, Legal Images, PO Bx 8099, Lumberton, TX 77657; Video Operator/ Technician: Warriene M. Flatt, Legal Images, PO Bx 8099, Lumberton, TX 77657 |
| 26. | Stewart, Ralph | 1/23/1998 | Jerry Burgess, as Special Administrator of the Estate of Delbert Burgess, deceased, and Frances Burgess vs. Illinois Central Railroad Company, et al., Case #95-L-93, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701

James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 1/18/1996 | Mollie Crabtree, individually and as Special Administrator of the Estate of Charles Crabtree, Dec. v. Armstrong World Industries, Inc., et al., #91 L 1, 11th Judicial Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701

James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 5/17/1996 | Lowell Sherer and Mary Sherer v. Owens Corning Fiberglas and Abex Corporation, #92-L-69, 11th Judicial Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701

James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Knight Reporting Service, 1308 Prince George Ct, Washington, IL 61571, 309.444.1600 |
| 27. | Taub, Stephen G. | 1/23/1998 | Jerry Burgess, as Special Administrator of the Estate of Delbert Burgess, | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 |

43

| No. | Witness | Date | Case | Plaintiffs' Counsel | Court Reporter |
|-----|---------|------|------|---------------------|----------------|
| | | | deceased, and Frances Burgess vs. Illinois Central Railroad Company, et al., Case #95-L-93, Circuit Court, 11th Judicial Circuit, McLean County, IL | James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 11/7/2001 | Orville Kiper and Bessie Kiper v. Abex Corporation, et al., Case #00 L 211, In the Circuit Court of the Eleventh Judicial Circuit, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |
| | | 8/18/2006 | Karen K. Reese, Individually and as Special Administrator of the Estate of Ralph R. Reese, Jr., Dec. v. Pneumo Abex Corporation, et al., Case #04 L 51, 11th Judicial Circuit Court, McLean County, IL | James Walker, Esq., 207 W Jefferson St, Bloomington, IL 61701<br><br>James Wylder, Esq., Wylder Corwin Kelly, LLP, 207 E Washington St, Bloomington, IL 61701 | Susan E. Geshwilm, CSR, Official Court Reporter, 513 Law & Justice Center, 104 W. Front Street, Bloomington, IL 61701, Lic. #084-002578 309.888.5279 geshwilms@frontiernet.net |

Abex reserves the right to supplement or amend this response as appropriate when and if additional transcripts become available, including any provided by plaintiffs in this matter.

**INTERROGATORY NO. 18:** Since 1930, did you purchase or otherwise acquire any asbestos-containing automotive friction product line from another company? If so, please state for each such product line:

(a)    The date of the contract of sale or acquisition;

(b)    If you will do so without a motion to produce, attach a copy of each agreement to your answers;

(c)    The trade, brand and generic name of each friction product line acquired;

(d)    The name of the company from whom you purchased each such asbestos-containing friction product line;

(e)    The location of any asbestos-containing friction product manufacturing facilities acquired, and the type of products manufactured therein.

**RESPONSE TO INTERROGATORY NO. 18:**

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to

44

the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex Corporation, Pneumo Abex LLC's predecessor, as defined herein, was incorporated as the American Brake Shoe and Foundry Company in New Jersey in 1902, and was reincorporated as that company in 1916 in Delaware. In 1926, the American Brake Shoe and Foundry Company caused to be incorporated a New York corporation named American Brake Materials Corporation. In 1933, American Brake Materials Corporation changed its name to American Brakeblok Corporation. In 1937, American Brakeblok Corporation merged with the American Brake Shoe and Foundry Company, and was thereafter operated as the American Brakeblok Division of that company. In 1943, the American Brake Shoe and Foundry Company changed its name to the American Brake Shoe Company. In 1966, the American Brake Shoe Company changed its name to Abex Corporation. In 1968, Abex Corporation became a wholly owned subsidiary of Illinois Central Industries, Inc. Illinois Central Industries, Inc. later changed its name to IC Industries, Inc. Abex later became a wholly owned subsidiary of IC Products Company, itself a wholly owned subsidiary of IC Industries, Inc. (IC Industries, Inc. changed its name to Whitman Corporation in 1988). In 1988, Abex Corporation was sold to PA Holdings Corporation. In 1990, Abex Corporation was absorbed into PA Holdings Corporation, which later changed its name to Pneumo Abex Corporation. In 2004, Pneumo Abex Corporation was merged into Pneumo Abex LLC.

Abex purchased The S.K. Wellman Company in 1963. To the best of current and reasonably available information and belief, The S.K. Wellman Company did not manufacture or distribute asbestos-containing products prior to Abex's purchase of The S.K. Wellman Company. Further, to

45

the best of current and reasonably available information and belief, following its purchase by Abex, The S.K. Wellman Company business may have sold asbestos-containing automotive friction products. Abex sold The S.K. Wellman Company in 1971.

In addition, there may be additional corporate acquisitions involving Abex which are potentially responsive to this interrogatory but due to the passage of time, the change of the nature of its business, and the change in personnel, Abex lacks current knowledge of any such acquisitions. Abex discontinued the manufacture and sale of asbestos-containing automotive friction products in 1987 and no longer operates any friction product manufacturing facilities. There are no current Abex employees, officers who worked for Abex or directors who sat on its Board during the period Abex manufactured and sold friction products with personal knowledge of the information contained in all the records and documents that might be responsive to this interrogatory.

**INTERROGATORY NO. 19:** At any time from 1930 to the present, have you had insurance against liability for the design, manufacture, distribution, and sale of asbestos-containing friction products?

**RESPONSE TO INTERROGATORY NO. 19:**

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex is currently involved in litigation with various insurance companies concerning the coverage available to Abex in asbestos personal injury actions. Various confidentiality agreements and protective orders are in effect in that litigation. On these grounds, Abex objects to the production of such information

46

and materials. This response is based upon such information and materials as are currently and reasonably available to Abex and Abex reserves the right to supplement or amend this response as appropriate when and if additional relevant information or materials become available. Discovery and investigation are continuing.

INTERROGATORY NO. 20: If so, state:

    (a)    The name and address of each insurance company;

    (b)    The date and number of each policy;

    (c)    The limits of each policy, including the deductible;

    (d)    The name, address and company position of the person who has custody of each policy.

RESPONSE TO INTERROGATORY NO. 20:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)):

RESPONSE TO INTERROGATORY NO. 20 SUBPARTS (a) to (c):

Abex is currently involved in litigation with various insurance companies concerning the coverage available to Abex in asbestos personal injury actions. Various confidentiality agreements and protective orders are in effect in that litigation. On these grounds, Abex objects to the production of such information and materials. This response is based upon such information and materials as are currently and reasonably available to Abex and Abex reserves the right to supplement or amend this

47

response as appropriate when and if additional relevant information or materials become available. Discovery and investigation are continuing.

The primary coverage was provided by:

From 1943 to 1957:   Maryland Casualty Company.

From 1957 to 1971:   Liberty Mutual Insurance Company.

From 1971 to 1974:   The Travelers Insurance Companies.

From 1974 to 1975:   Argonaut Insurance Company.

From 1975 to 1978:   Continental Insurance Company.

From 1978 to 1979:   Northwestern National Insurance Company.

From 1979 to 1980:   Continental Insurance Company.

From 1980 to 1985:   National Union Fire Insurance.

RESPONSE TO INTERROGATORY NO. 20 SUBPART (d):

William V. Buccella, a vice president of Pneumo Abex LLC, 35 East 62nd Street, New York, New York, is the custodian of documents relating to Abex Corporation.

INTERROGATORY NO. 21: Has any workers' compensation claim ever been made against you alleging disability or injuries arising out of exposure to asbestos dust at manufacturing, repair or maintenance facilities in the Southern California area? If yes, please:

(a)   Identify the date of the claim;

(b)   Identify the jurisdiction where the claim was filed;

(c)   Identify the case name and case number;

(d)   State the judgment rendered; and

(e)   Identify the employer against whom the case was filed.

RESPONSE TO INTERROGATORY NO. 21:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to

48

the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Abex also objects to this interrogatory to the extent it purports to seek medical records or privileged personnel information. Abex will not provide such information absent an appropriate waiver of the applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), and to the best of current and reasonably available information and belief, Abex is unaware of any such claims.

**INTERROGATORY NO. 22:** With respect to each product identified in your answers to Interrogatory Nos. 9 and 11 above, please describe:

(a)     The procedure, if any, which you recommended or used for installing the asbestos-containing automotive friction product in the vehicle for which it was manufactured;

(b)     The procedure, if any, which you recommended or used for removing the asbestos-containing automotive friction product from the vehicle for which it was manufactured;

(c)     Whether the procedure you recommended or used in the use, maintenance or servicing of the asbestos-containing automotive friction product included:

(i)     Grinding;

(ii)    Arcing;

(iii)   Beveling; or

(iv)    Sanding.

RESPONSE TO INTERROGATORY NO. 22 SUBPART (a):

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable

49

privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), in 1979 and 1982, Abex participated in the preparation and distribution of a pamphlet published by the Friction Materials Standards Institute, Inc. entitled "Recommended Procedures for Reducing Asbestos Dust During Brake Servicing." An excerpt of this pamphlet is reprinted below:

RECOMMENDED PROCEDURES FOR REDUCING
ASBESTOS DUST DURING BRAKE SERVICING

Because studies have indicated that exposure to excessive amounts of asbestos dust may be a potential health hazard, OSHA has set maximum levels to which workers may be exposed. Since most automotive friction materials normally contain a sizable amount of asbestos, it is important that people who handle brake linings and clutch facings understand the nature of the problem and know the precautions to be taken.

1)     Areas where brake work is done should be set aside if possible, and entrances should be posted with an asbestos exposure sign as follows:

Asbestos
Dust Hazard
Avoid Breathing Dust
Wear Assigned Protective Equipment
Do Not Remain In Area Unless Your Work
Requires It
Breathing Asbestos Dust May Be Hazardous
To Your Health

2)     The amount of asbestos in the dust brake lining wear is normally at an extremely low level because of chemical breakdown during use, and if machining of friction material does not take place, simple procedures will minimize exposure. During brake servicing, the mechanic should wear a respirator approved by NIOSH for asbestos dust. It should be worn during all procedures starting with the removal of wheels and including reassembly.

3)     When removing worn friction materials, remove the accumulated dust in the assemblies with an industrial vacuum cleaner equipped with a high efficiency filter system. If such equipment is not available, dust can be removed with a damp cloth. Do not use compressed air or dry brushing for cleaning unless the assembly is enclosed and properly exhausted.

4)     Whenever possible, purchase friction materials pre-ground and ready for installation. If matching is necessary, the precautions which must be taken are of extreme importance. This is the operation in brake service when exposure to asbestos dust may be at its highest. This increases the difficulty in complying with

50

the OSHA standards. In addition to the approved respirator, there must be local exhaust ventilation such that worker exposures are maintained below the OSHA asbestos standards. If there is any question as to the efficiency of asbestos dust removal by the machine, the manufacturer should be contacted.

5)    Industrial vacuum cleaner bags containing asbestos dust and cloths used for wiping brake assemblies should be sealed in plastic bags and labeled with the following warning label printed in letters of sufficient size and contract to be readily visible and legible:

Caution
Contains Asbestos Fibers
Avoid Creating Dust
Breathing Asbestos Dust May
Cause Serious Bodily Harm

All asbestos waste should be disposed of in accordance with OSHA and EPA asbestos regulations. During removal of vacuum bags, an approved respirator, as described in (2) above, should be worn.

6)    Good housekeeping is essential in a workplace where asbestos-containing materials are handled. Industrial vacuum cleaners equipped with multiple stage, high efficiency filters should be used for removing accumulations of asbestos dust and waste. Never use compressed air or dry sweeping for cleaning. Water or other dust suppressants should be applied if brooms are used.

7)    Good personal hygiene practices are important in minimizing asbestos dust exposure. Do not smoke. Wash before eating. Shower after work. Change to work clothes upon arrival at work and change from work clothes at conclusion of work. Work clothing should not be taken home. Laundering asbestos contaminated clothing shall be done so as to prevent release of airborne asbestos fibers in excess of the exposure limits.

CAUTION: DO NOT BREATHE ASBESTOS DUST

A copy of this pamphlet is attached.

RESPONSE TO INTERROGATORY NO. 22 SUBPART (b):

See Response to Interrogatory No. 22 (a), which is incorporated herein, as if fully rewritten.

RESPONSE TO INTERROGATORY NO. 22 SUBPART (c):

No. Generally the asbestos-containing automotive products that Abex manufactured were not intended to be ground, arced, beveled or sanded in the application or installation of these products.

INTERROGATORY NO. 23: State the names and addresses of your chief medical officers from 1930 until the present time, listing the periods of time each such medical officer was employed by you, and in what capacity.

51

RESPONSE TO INTERROGATORY NO. 23:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), the following persons served as a medical director of Abex:

| Name | Last Known Place of Employment | Last Known Address | Years of Employment |
|---|---|---|---|
| Lloyd E. Hamlin | 2501 S. Blue Island Avenue Chicago, Illinois 60608 | Deceased | 1941-1961 |
| Charles C. Blackwell | 2501 S. Blue Island Avenue Chicago, Illinois 60608 | 4911 East Doubletree Ranch Road Paradise Valley, Arizona 85253 | 1961-1976 |
| Frederick W. Knoch | 4550 W. 26th Street Chicago, Illinois 60623 | Deceased | 1976-1981 |
| William F. Redman | 485 Frontage Road Burr Ridge, Illinois 60527 | 396 Belden Avenue Glendale Heights, Illinois 60139 | 1982 |
| Dennis G. Egnatz | 485 Frontage Road Burr Ridge, Illinois 60527 | 121 Lakewood Circle Burr Ridge, Illinois 60527 | 1982-1987 |

INTERROGATORY NO. 24: Name the person in the corporate structure to whom the chief medical officer reports, also giving that person's position or job title in the corporation.

RESPONSE TO INTERROGATORY NO. 24:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable

52

privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), and to the best of current and reasonably available information and belief, unknown.

**INTERROGATORY NO. 25:** Please state the duties and responsibilities of the corporation's chief medical officer.

### RESPONSE TO INTERROGATORY NO. 25:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex has employed medical directors whose job duties have included ensuring a safe working environment for all Abex employees. Because these personnel dealt with the working conditions of Abex employees, further information or materials regarding them lack relevance to the issues arising in this case and are not reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY NO. 26:** Are you, or have you ever been, a member of the Friction Materials Standards Institute? If so, please state the date you first became a member, and the inclusive years of your membership.

### RESPONSE TO INTERROGATORY NO. 26:

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex was a member of the Friction Materials Standards Institute, Inc. from 1949 to 1994.

**INTERROGATORY NO. 27:** Have any of your employees been members of the Health and Environmental Safety Committee of the Friction Materials Standards Institute, or ever attended any meetings of such committee? If so, please state their names, membership status, inclusive years of membership and inclusive years of attendance at such meetings.

### RESPONSE TO INTERROGATORY NO. 27:

Abex objects to this interrogatory to the extent it purports to seek information or materials that have been gathered, received or prepared in the course of litigation, or which are otherwise subject to the attorney-client privilege, protected by the attorney work product doctrine, the rule protecting materials prepared in anticipation of and/or in connection with litigation or any other applicable privilege. (See C.C.P. §2030.240.)

Without waiving its objections and subject to same, and based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), and to the best of current and reasonably available information and belief, Abex has found no information indicating that any employee of Abex attended any such meeting.

**INTERROGATORY NO. 28:** Have you received copies of transcribed minutes of the various committee meetings, general meetings and Friction Materials Standards Institute Board of Director meetings within one year of such meetings?

### RESPONSE TO INTERROGATORY NO. 28:

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), and to the best of current and reasonably available information and belief, Abex does not know whether or when it received copies of any minutes of any meetings held by the Friction Materials Standards Institute, Inc.

**INTERROGATORY NO. 29:** Have you ever been a member of the Industrial Hygiene Foundation or the Industrial Health Foundation, and if so, please state the years inclusively of such membership.

### RESPONSE TO INTERROGATORY NO. 29:

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), and to the best of current and reasonably available

54

information and belief, Abex was a member of the Air Hygiene Foundation of America, Inc. (which later became the Industrial Hygiene Foundation) (1937 to 1961) and the American Industrial Hygiene Association, although such membership is neither confirmed nor corroborated by the records maintained by or in the possession of Abex.

**INTERROGATORY NO. 30:** State the names of all persons who have acted in the capacity of medical librarian for you since 1930, give their current address, telephone number, and current position with the company.

### RESPONSE TO INTERROGATORY NO. 30:

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), Abex never employed a medical librarian.

**INTERROGATORY NO. 31:** Do you subscribe to the United States Public Health Service Bulletin? If so, please state the date when you first so subscribed to the Public Health Service Bulletin.

### RESPONSE TO INTERROGATORY NO. 31:

Based on a reasonable and good faith effort to obtain responsive information to this interrogatory (see C.C.P. §2030.220(c)), no.

Dated: October 18, 2010                    DEHAY & ELLISTON LLP

By: _____
JENNIFER JUDIN, ESQ.
JOANNA L. MACQUEEN, ESQ.
SALIN EBRAHAMIAN, ESQ.
Attorneys for Defendant
PNEUMO ABEX LLC,
successor in interest to Abex Corporation

55

# Exhibit M

Critical Air vs. Mount Graham

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY

PENNSYLVANIA

JOYCE SPRAGUE,                    )
Administratix of the Estate )
of THOMAS SPRAGUE, Deceased.)
                                  )
            Plaintiffs,     )
                                  )
    vs.                     ) CIVIL DIVISION
                            ) GD NO. 97-2029
ABEX CORPORATION, et al.,   )
                            )
            Defendants.     )

VIDEOTAPED DEPOSITION OF CHARLES BLACKWELL, M.D.

Scottsdale, Arizona
January 24, 2003

(CONDENSED)

Critical Air vs. Mount Graham

**2**

I N D E X
E X A M I N A T I O N S
EXAMINATION BY MR. DeLUCA                6

EXHIBITS MARKED FOR IDENTIFICATION

Exhibit No.   Description        Page
1    Plaintiff's Notice Of        6
     Videotaped Deposition

2    Memorandum Of Agreement       49

3    Article on Brake Lining       90
     Decomposition Products
4    Letter dated November 8, 1971   100
     to Mr. Samuel T. Lawton from
     G.R. Graham
5    Letter dated May 10, 1972 to    106
     Mr. D.K. Rennie from C.C.
     Blackwell, Jr., M.D.
6    Minutes Of The Meeting Of The    114
     Asbestos Study Committee dated
     Thursday, August 17, 1972
7    Minutes Of The Meeting Of The    140
     Asbestos Study Committee dated
     Friday, February 16, 1973
8    Four-page letter dated March 2,   145
     1973 to Mr. Erich H. Feierabend
     from C.C. Blackwell, Jr., M.D.
9    Minutes Of Annual Meeting Of The   155
     Friction Materials Standards
     Institute, Inc., dated Wednesday
     and Thursday, June 27 and 28, 1973

**4**

DEPOSITION OF CHARLES BLACKWELL, M.D., was taken on January 24, 2003, commencing at 11:16 a.m., at the Gainey Suites Hotel, 7300 East Gainey Suites Drive, Scottsdale, Arizona, before JENNIFER SMITH, RPR, Certified Court Reporter Certificate No. 50180 for the State of Arizona.

--oOo--

APPEARANCES:

FOR PLAINTIFFS SPRAGUE:

GOLDBERG, PERSKY, JENNINGS & WHITE, P.C.
By: Aaron J. DeLuca, Esq.
1030 Fifth Avenue
Pittsburgh, Pennsylvania 15219

FOR DEFENDANT PNEUMO ABEX CORPORATION:

SMITH ABBOT, LLP
By: Edward P. Abbot, Esq.
3 New York Plaza
New York, New York 10004

FOR DEFENDANT GEORGE V. HAMILTON, INC. And ALLIED SIGNAL, INC.:

WILLMAN & ARNOLD, LLP
By: Roger W. Foley, Jr., Esq.
705 McKnight Park Drive
Pittsburgh, Pennsylvania 15237

FOR CHARLES BLACKWELL, JR., M.D.:
KENT & WITTEKIND, PC
By: Peter M. Wittekind, Esq.
40 North Central Avenue, Suite 1400
Phoenix, Arizona 85004

ALSO PRESENT: Jerry Walker, Videographer.

**3**

Exhibit No.   Description        Page
10   Eight-page document on        158
     Asbestos And The Friction
     Material Industry
11   Abex Corporation Industrial    167
     Hygiene Survey Friction Products
     Group, Winchester, Virginia
     April 19-23, 1976

12   Letter dated May 13, 1976     181
     to Mr. D.K. Rennie from C.C.
     Blackwell, Jr., M.D.
     Re: Asbestos Write-Up
13   Letter dated May 19, 1976     185
     to Dr. C.C. Blackwell, Jr.
     Re: Asbestos Write-UP

**5**

MR. FOLEY: My name is Roger Foley and I just want to put on the record that there was an order of court that was issued by Judge James in the Court of Common Pleas of Allegheny County related to this deposition and the order of court reads, "And now this 9th day of January 2003, it is ordered that the videotaped deposition of Charles Blackwell, M.D. will be limited in scope to the corporate liability of Pneumo Abex and the body of scientific and medical information he relied upon in advising Pneumo Abex as to the use of asbestos in this industry." I'm anticipating if I have any objections, it will probably be pursuant to that order. So I just wanted to put that on the record just to save time later, if necessary.

MR. ABBOT: An objection of one defendant is as good as an objection for all.

MR. DeLUCA: That are present?

MR. ABBOT: That are present.

MR. DeLUCA: Peter, did you have something?

MR. WITTEKIND: Nope.

(Deposition Exhibit No. 1 was marked for identification.)

Critical Air vs. Mount Graham

10

Army or some other branch. I did ultimately go into the United States Air Force.

Q. Do you recall what year it was that you entered the Air Force?

A. I'm not sure of the exact date, but --

Q. That's okay.

A. Well, I want to try and tell you. Probably just about January of '51, right in there. I could be off three or four months. But the basic I had and then the next thing, I was shipped off to Fairbanks, Alaska and I stayed there for the balance of my two-year term.

Q. And then following that two-year term, were you honorably discharged?

A. Yes, I was.

Q. And then did you return to Illinois?

A. I returned to Illinois in '55 and I opened an office for the practice of internal medicine with another doctor, subletting from him. That was on Church Street in Evanston, Illinois.

Q. At that time, were you just like a family doctor seeing patients with all kinds of different problems?

A. I was doing internal medicine and that's the closest thing to general practice, but no

11

surgery, no obstetrics, no pediatrics.

Q. Okay.

A. I stayed there and I also, as I was getting started, I took a position as an assistant medical director of the Washington National Insurance Company and I used that to supplement my income as I got started.

Q. Was that also in the Evanston area?

A. Either there or just a block away from my office. It was very convenient.

Q. What type of work did you do as the, I think you said an assistant medical director?

A. I performed medical exams on their employees and I helped with some of their underwriting of medical risks.

Q. Okay.

A. There was another doctor doing the same thing, plus a full-time medical director there.

Q. How long did you have your private practice in Illinois?

A. I conducted this until somewhere in 1961.

Q. Is that when you went to work for what I'll call Abex?

A. That's correct.

Q. I guess for purposes of this deposition,

12

I'm going to use the name Abex, but when I do that, will you understand me to include American Brake Shoe, American Brake Lock and the American Brake Shoe and Foundry Company, which I think were various names that Abex had over the years?

A. I don't think that's entirely correct and you made some omissions, but that's all right.

Q. Were there other names that you can tell me about, just so we know who we're talking about when we say Abex?

A. AM Steel was a division, just like Gray Iron was a division. Do you follow?

Q. Yes, sir.

A. AM Steel was American Manganese Steel Company and these various divisions, they each had their president, et cetera, but Abex was the flagship name.

Q. When I use the term Abex, I'm talking about all of them. Okay?

A. Okay.

Q. How is it, Dr. Blackwell, that you became employed by Abex in 1961?

A. The job, it seemed like an interesting one.

Q. You had some prior experience with serving as a medical director for the Washington National

13

Insurance Company?

A. Different from typical private practice, yes.

Q. Would I be correct --

A. If you want to know a little more, and I don't want to volunteer more than I need to, so you're going to have to ask specific questions.

Q. Okay. All right.

A. I'm trying to be helpful so you understand me.

Q. Yes, sir. Let me ask you this. It seems to me, and you can correct me if I'm wrong, but the practice of medicine that you had in Evanston, Illinois on a daily basis would be a lot different than that which you did as a medical director for Abex. Were you looking to make a change at that time, or was it just an opportunity there that you took?

A. This was an opportunity. I'll tell you a little more. I was asked by the other doctor from whom I sublet and one of his patients worked for the Walgreen company -- you know the Walgreen name?

Q. Is that the drug store?

A. Drug company.

Q. Yes, sir.

4 (Pages 10 to 13)

Critical Air vs. Mount Graham

30

them more than once because they're going to do it again later, aren't they?

Q. I'm not sure if I understand what you're saying.

A. A little girl stealing cookies out of a cookie jar just before dinner, would your wife want her to keep that up and spoil her dinner? But that little girl will try that again. People take shortcuts if they can and you don't want those shortcuts. You want to have a good program, that's why you have a safety director in the plant to try and see that things go the same way seven days week, 24 hours a day. You don't have a preferred shift or a preferred day to work.

Q. Did anybody --

A. Does this make sense to you?

Q. Well, I'm not sure I understand what --

A. If you don't understand me, we'll have to limit my answers, I guess.

Q. When you started as the corporate medical director in 1961, what kind of a staff did Abex provide you with?

A. I've already told you where you asked what people were in that building.

Q. Okay. And all of them worked for you under

31

your direction?

A. I was responsible at the top for their administration.

Q. And that was 14 to 17 people?

A. Roughly.

Q. Okay. That were responsible for the friction products group, the American Manganese Steel division, the Wellman division, the forge plants, three or four forge plants, 29 gray iron foundries, the Dennison division, the railroad division and the aerospace division?

A. Just make it Abex, all of those, and also we include sales offices.

Q. Okay. It just seems to me that that was quite a task that you were assigned to coordinate the health and safety in those plants.

A. Correct.

Q. And I'm wondering whether you felt that you were given enough resources by Abex to do the job that you wanted to do?

MR. WITTEKIND: Form and foundation. Go ahead.

THE WITNESS: I couldn't hear what was being said.

MR. WITTEKIND: Go ahead and answer,

32

Doctor.

THE WITNESS: I'm sorry?

MR. WITTEKIND: I made an objection, but you go ahead and answer.

THE WITNESS: What's the question, please?

Q. BY MR. DeLUCA: I said, I'm wondering if you felt that Abex gave you the resources to do the kind of job that you wanted to do.

A. As I came to know what I felt was required of me, I never felt that we were short-changed. This is all a learning process. OSHA was just coming into existence.

Q. Would you agree with me that Abex was aware of the hazards of asbestos prior to OSHA?

A. Yes.

Q. When you started your work with Abex, was Abex using asbestos in their friction divisions?

A. They were using it in Brakeblok in Winchester, that's the big plant.

Q. They were using asbestos as a raw ingredient to make brake linings, correct?

A. Yes.

Q. Was asbestos used in the foundries?

A. I'm not aware of it being used there.

Q. As a raw material?

33

A. No, we were using iron and other metallic things.

Q. Were there furnaces and ovens and kilns at those facilities?

A. They'd line those with bricks.

Q. Are you saying that you don't believe any asbestos was used as insulation in those facilities?

A. Well, if you were going to insulate the wall of a foundry, I can't see why you'd want to use asbestos there. You have just a sheet metal wall or a plain brick wall and you're not going to be breaking those walls.

Q. Was asbestos used as pipe insulation in those foundries?

A. A plumber may have used some. We know -- you know as well as I do that asbestos is used in roofing materials and in the plumbing industry. You can even have some in talc, I think, that the barber dusts you off with it. My mother had an asbestos ironing board cover.

Q. Sir, I just want to talk about Abex. Okay? My question is simple --

A. My concern and my knowledge of asbestos in Abex was confined to the friction products plants.

Q. Would that include the railroad division as

9 (Pages 30 to 33)

Critical Air vs. Mount Graham

**58**

center or anything equivalent to that.

Q. I think that, and you may know this, that it started out many years ago as a tuberculosis sanitarium.

A. I didn't know that.

Q. And that obviously goes back pretty far back?

A. You're going back into the '30s before you were born.

Q. Yeah. Okay. So let me go back to what you said about workers, particularly the level of education. I asked you some time ago whether you thought that workers who are around a carcinogen in a workplace should be told of it and you raised education as an issue and let me ask you the question. Something as severe as cancer, as serious as cancer, life-threatening, shouldn't that be disclosed to workers?

A. If a workman is working with some materials that might cause cancer, maybe there's some intermediate steps that he's going to encounter, too. I would tell him, "We don't want you to develop dust disease of the lung which can compromise your breathing." I try and gauge by his facial expressions that he can understand me. You don't

**59**

want to talk above him and you have to use terminology that he can understand.

Q. Right. So if --

A. And I would say that, "This can produce tumors and some of those tumors can be bad." Don't you think that's a little better way to talk to somebody that you scared to death if he heard just the word cancer. There's a polite way of telling him things, but you got to do your part. Whether he's a CPA of a big corporation, you're going to have to make sure they all understand you.

Q. Right. Like when you said earlier --

A. I'm just saying you use terminology that seems appropriate. I've always tried to talk to patients so they can understand me and that's all and I can tell by the way that they're responding the message you want to get across. If you didn't, you failed.

Q. So as far as the work force at Abex, you know, those people, I assume, did not have medical backgrounds, and would you agree that if --

A. A few did.

Q. You didn't have doctors working there making brakes?

A. No.

**60**

Q. If you told a worker that exposure to asbestos can cause interstitial pulmonary fibrosis and pulmonary complications --

A. They wouldn't understand what interstitial meant. And there I'd be talking above them, they wouldn't learn anything. "What's that doctor talking about? Why doesn't he just explain it to me?"

Q. And that's --

A. That's what I'm getting back to. I'm not impugning the intellectual obtainment of the employees who worked for us.

Q. I didn't take it that way.

A. I meant you to understand I didn't, but I have to work with all -- as a doctor, you work with all walks of life of people.

Q. But, you know, the point I'm trying to make, and I didn't take it the way that you perhaps thought I did, but, you know, you have to get your message across clearly and because you're dealing with something that causes cancer and can be fatal, wouldn't it be important to tell people, "Look. This can kill you and if you don't listen to us and don't take precautions and you don't do X, Y and Z, you can die"?

A. You need to tell the people what the end

**61**

results were of improper exposure and you have to sell them on the idea of taking care of themselves on the job and pursuing good work practices and you need to engage whoever else to help you to accomplish that.

Q. And we've been talking about factory workers, but would what you just said apply to end users of products that you'd have to educate them, you have to tell them about the safe work practices they should use and you have to let them know what can happen if you don't follow them?

A. Remember this morning I told you that 80 percent of the companies in the United States have 500 or fewer employees? It's very difficult to get to all of those companies all across the United States and whose responsibility is that? It wasn't mine at Abex to go to every town in every state and talk to the people. I'm taking care of the Abex people and trying to have good, safe work habits and practices. I'm trying to look out for them. I'm trying to look at their medical profiles where they get medical exams and see that they can do that job safely.

For example, you wouldn't like it if we had a crane operator with molten metal and that fellow

16 (Pages 58 to 61)

Critical Air vs. Mount Graham

94

THE WITNESS: Yes.

Q. BY MR. DeLUCA: Is that essentially the way breaks were made at Abex?

MR. ABBOT: Objection.

THE WITNESS: On that order.

Q. BY MR. DeLUCA: And once they were essentially baked, then they were machined, drilled, countersunk?

A. As I added for you.

MR. ABBOT: Objection.

Q. BY MR. DeLUCA: As you described. And it was known to Abex when you started that that process of cutting or grinding or drilling or countersinking the asbestos brake linings could result in the release of asbestos fibers?

A. This is why our industrial hygiene department visited such a plant, to see that it was controlled.

Q. Because if it was uncontrolled, it would be a hazard?

A. We couldn't operate a plant. We wouldn't operate a plant that way.

Q. Do you know how brakes are used in the field?

A. In the field?

95

Q. Yeah. By people who are changing brakes on cars.

MR. ABBOT: Objection.

MR. FOLEY: Are you speaking of Pneumo Abex brakes or brakes in general?

MR. DeLUCA: Brakes in general.

MR. FOLEY: I object.

THE WITNESS: I can watch someone change a brake on my car or something, that's the extent of it. I don't get up close and look because it's not of any interest to me. I'll go read a magazine while they work on my car.

Q. BY MR. DeLUCA: Okay. Have you ever changed the brakes on your car?

MR. ABBOT: Objection. Asked and answered.

THE WITNESS: I already answered that.

Q. BY MR. DeLUCA: You never have?

MR. ABBOT: Objection. Asked and answered.

Q. BY MR. DeLUCA: Is that right?

A. That's right.

Q. Do you know anything about how brakes are changed on cars?

MR. ABBOT: Objection. Asked and answer.

THE WITNESS: I can't really say. I know they have to undue them. They probably have clips or

96

whatnot to apply pressure to the takeoff. I don't know.

Q. BY MR. DeLUCA: Do you know whether brakes are machined in very similar ways to that in which they're machined when you make them?

A. What do you mean machined?

Q. Ground.

A. I've seen it.

Q. You've seen it in the plant where they're made?

A. That's right. Where they're made, that's what I thought you were referring to.

Q. Do you know whether they were ever ground in a brake garage somewhere as far as fitting the lining to the shoe?

MR. ABBOT: Objection.

THE WITNESS: I don't know anything about that. I can adjust a little bit. For example, when this brake would be put at the work table, the man would be working on it, we wanted to control all of that exposure right there on his work table and so our industrial hygiene department studied this problem and worked on it and we came up with high velocity, low volume exhaust and we put a little head on the end of this exhaust tube maybe two or two and

97

a half inches in diameter and we'd bring that up and position it right against the brakes so when they were drilling like six holes in that brake shoe at one time and countersinking, we'd collect all of that little bit of dust coming from that during our operation. It was not in the breathing zone of the man. It wasn't on top of his work table. It was exhausted out and where you say put it in the pond. You follow?

But this was collected. Now, this is trying to protect that man and I wouldn't have liked to have seen that man wearing a respirator when I knew we could do the job as we did with what I've just described. That was part of my job and our industrial hygiene people.

Q. BY MR. DeLUCA: So you would agree with me that any time that brake material was ground or drilled or subject to some stress that's going to cause a release of fibers that --

A. We'd want to collect it.

Q. Right, or the workers should be protected in some fashion?

A. We would want to protect the laborer unloading the box car. You know, many times people who use a forklift in any company in the United

25 (Pages 94 to 97)

Critical Air vs. Mount Graham

194

talking about?

Q. BY MR. DeLUCA: Well, the series of events that are described in these last couple documents?

A. You have to have adequate satisfaction of what you're doing and you try to do what you think has to be done, should be done and if I was selling something and I wasn't accomplishing the sales I wanted, I'd look for another line.

Q. That's what you did?

A. And I still like occupational health and I guess you're off your time now, but I've done other things in occupational health out here to this and it's been very satisfying staying in the same field.

MR. DeLUCA: Thank you.

MR. ABBOT: I have nothing further.

MR. WITTEKIND: That's it.

THE VIDEOGRAPHER: This concludes the deposition of Dr. Charles Blackwell. Off the record at 4:02 p.m.

(Whereupon, the videotaped deposition concluded at 4:02 p.m.)


(Signature waived.)
CHARLES BLACKWELL, M.D.

195

STATE OF ARIZONA )
) ss.
COUNTY OF MARICOPA )

BE IT KNOWN that the foregoing deposition was taken before me, JENNIFER SMITH, a Certified Court Reporter, Certificate #50180, for the State of Arizona; that the witness before testifying was duly sworn by me to testify to the whole truth; that the questions propounded to the witness and the answers of the witness thereto were taken down by me in shorthand and thereafter reduced to print by computer-aided transcription under my direction; that the witness elected to waive the right to read and sign; that the foregoing pages are a full, true and accurate transcript of all proceedings and testimony had and adduced upon the taking of said deposition, all done to the best of my skill and ability.

I FURTHER CERTIFY that I am in no way related to nor employed by any of the parties hereto nor am I in any way interested in the outcome hereof.

DATED at Phoenix, Arizona, this 28th day of January, 2003.


JENNIFER SMITH, RPR
Certified Court Reporter #50180

# Exhibit N

EFiled: Feb 24 2004 4:49 EST
Filing ID 3160665

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR THE NEW CASTLE COUNTY

IN RE: ASBESTOS LITIGATION    :    C.A. No. 77C-ASB-2

:

:

:

:

## DEFENDANT, INGERSOLL-RAND COMPANY'S
## OBJECTIONS AND ANSWERS TO STANDING ORDER NO. 1 INTERROGATORIES

### PRELIMINARY STATEMENT AND OBJECTIONS

(a)    The information supplied in these Responses is not based solely upon the knowledge of the executing party, but includes some information assembled by and/or within the knowledge of the party's authorized agents, representatives, and, unless privileged, attorneys. Because much of the information is of, or relates to, events of many years ago, it is impossible for this Defendant to retrieve or reconstruct some of the requested information. Many of the individuals who might have had personal knowledge of the matters to which Plaintiffs' discovery relate are deceased or are otherwise unavailable to Defendant, and investigations to date indicate that some information in documents which might relate to matters inquired into by Plaintiffs' discovery may have been destroyed pursuant to the Ingersoll-Rand Company's record retention policy or are otherwise unable to be found. This Defendant is engaged in a continuing investigation in an attempt to locate or confirm the absence of such information or documents and this Defendant is also engaged in a continuing investigation with respect to the matters inquired into by Plaintiffs' discovery. Therefore, this Defendant reserves the right to amend these responses if new or more accurate information becomes available or if errors are discovered. Furthermore, these responses are given without prejudice to this Defendant's right to rely at trial on subsequently discovered information or on information inadvertently omitted from these responses as a result of mistake, error or oversight.

(b)    The word usage and sentence structure is that of the attorneys who, in fact, prepared these Answers and does not purport to be the exact language of the executing party.

(c)    The Interrogatories have been interpreted and answered in accordance with Delaware Rules, plain English usage, and, to the extent not specifically challenged by objection, the definitions and instructions if same were included.

(d)    All Answers of Ingersoll-Rand Company are subject to continuing investigation and discovery, and defendant reserves the right to supplement or amend said responses at any

DE022930.1

time during the course of this litigation.

(e)    Ingersoll-Rand Company objects to the extent that these Interrogatories seek to elicit information that is protected by the attorney-client privilege, the work product doctrine or constitutes trial preparation material and to the extent they seek to elicit an expert witness opinion beyond the scope of permissible discovery.  Ingersoll-Rand further objects to these interrogatories in that they are overbroad, burdensome and not reasonably calculated to lead to discoverable information.

(f)    Ingersoll-Rand Company further objects to the Interrogatories as defendant has not been provided with sufficient information by plaintiffs to enable it to respond these discovery requests.  The plaintiffs have not identified the product(s) with specificity that allegedly were sold by Ingersoll-Rand Company and that plaintiffs claim were a substantial causative factor in producing his alleged asbestos-related diseases.

(g)    Unless otherwise stated in an answer to specific Interrogatories, the responses herein are limited to the unknown products allegedly supplied to "Plaintiff's employers" which defendant understands to be places where the plaintiff(s) was employed.  Defendant objects to answering Interrogatories requesting information relating to any other locations on the grounds that such additional information is irrelevant, immaterial, not calculated to lead to the discovery of admissible evidence, and, furthermore, would be unduly burdensome, expensive and harassing. Defendant also objects to the extent the Interrogatories seek information concerning the working conditions of Defendant's employees as plaintiff(s) was not employed by Defendant, nor has plaintiff(s) asserted any basis for a premise liability claim against defendant.

(h)    Ingersoll-Rand Company objects to answering these Interrogatories without inspecting the location, facility and/or plant wherein plaintiff(s) allege asbestos exposure and without reviewing documents that may be in the custody of the plaintiffs' employers, which may discuss, refer, or relate to the use of products allegedly supplied by defendant to these facilities. Without waiving this objection, defendant shall answer to the best of its knowledge, information, and belief, reserving the right to supplement these answers if it obtains additional information.

(i)    With respect to the products allegedly at issue in this case, such products never contained or incorporated any asbestos components as designed and manufactured by this Defendant.  Some Ingersoll-Rand Company products may have contained or incorporated outside purchased components, which may have contained encapsulated asbestos fibers such as gaskets or seal packing but no such components are understood to be at issue in this litigation.

(j)    Ingersoll-Rand objects to the "definitions" employed within these Interrogatories as attempting to ascribe novel or unusual meanings to words or phrases that are subject to common, ordinary usage and interpretation.  Ingersoll-Rand similarly objects to the characterization of any of its equipment as "asbestos products", and specifically denies that any plaintiff or plaintiffs decedent was exposed to asbestos from any product from which Ingersoll-Rand was responsible

DE022930.1                                      -2-

Without waiving any of its objections, and subject thereto, Ingersoll-Rand Company (hereinafter "INGERSOLL-RAND") hereby responds to the Plaintiff's Interrogatories as follows:

1.      Describe in detail, with specificity and particularity, each product mined, produced, manufactured or sold by the answering Defendant or its predecessors in title or subsidiaries which contained asbestos for each year from 1936 until 1980 and for each such product, describe:

(a)      its chemical ingredients;

(b)      state the manner in which it was intended to be used, i.e., in the construction and/or insulation of buildings and/or insulation of buildings and/or equipment, etc.;

(c)      for each ingredient contained therein, state:

(i)      the name or chemical composition of each substance, what harmful effects, if any, are known, that it produces in man or mammals and whether it produces its harmful effects through ingestion, inhalation, absorption or a combination of these;

(ii)      when you determined and/or learned that the substance produced harmful effects and how such effects were produce;

(iii)      identify each individual who participated in such determination and/or obtained such knowledge;

(iv)      identify each document that refers, reflects or relates to any information pertaining to the properties of each of the ingredients and/or how the harmful effects are produced as well as your determination of those effects and the manner by which they are produced;

(v)      as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied;

DE022930.1                                   -3-

(vi)    which products or ingredients were mined, which were manufactured and which were distributed by answering Defendants.

ANSWER: Defendant has never, at any time engaged in the manufacture, marketing, sale, use and/or distribution of asbestos containing insulation. Defendant further submits that to the best of its knowledge none of its corporations, companies, businesses or joint ventures, have ever mined, milled, or manufactured "asbestos products" or "asbestos containing products" as it believes these terms are defined. For over one hundred and twenty-five years Defendant has manufactured numerous types of multi-use products, including pumps and compressors which may have contained components manufactured by third parties. Some of these components and its replacement parts may have had internal part(s) consisting of gasket(s) and/or seal packing(s) manufactured by these third parties that contained encapsulated asbestos fibers. Regarding these purchased internal encapsulated asbestos containing parts that may have been incorporated into its equipment, Defendant purchased them from various manufacturers based upon commercial availability and the particular application involved. Upon information and belief, some of these part manufacturers may have included Garlock, Flexitalic, Crane and/or Anchor Packing. Defendant does not maintain a list of the equipment which may have incorporated a purchased internal encapsulated asbestos part. The asbestos content, fiber type and composition of such a part would be only within the knowledge of that part(s) manufacturer. However, as it is generally known in the industry, Defendant believes these types of asbestos-containing parts contained only chrysotile asbestos fibers.

DE022930.1                                        -4-

The first date any purchased internal encapsulated asbestos containing component part was utilized by Defendant in its products in the United States is unknown. Defendant estimates that these parts were no longer utilized when viable alternative non-asbestos containing parts became commercially available from the third party manufacturers to Defendant. If a viable non-asbestos containing part was not available it was replaced when it became commercially available from the third party manufacturers to Defendant.

Defendant's records are not maintained in a manner that if given a specific site Defendant can state whether products with a purchased internal encapsulated asbestos containing part(s) was supplied to that location.

Defendant does not maintain its records in a manner to respond to a particular method used in the sale of its goods. Pursuant to the corporate document retention policy sales related records are generally destroyed within seven (7) years. The documents retention policy has been in effect since at least July 1, 1974. Records have been destroyed or discarded through the normal course of business activities but the exact date and location of the destruction or discard, the custodian and location of the records prior to destruction or discard, and the identity of persons who ordered, authorized or supervised any such destruction or discard are unknown at this time.

2.      If any product identified in answer to Interrogatory No. 1 was produced, manufactured and/or sold under a trade name, identify that trade name(s) and state the time period that each such product was sold under trade name.

ANSWER: See Response to Interrogatory No. 1.

3.      For each product identified in answer to Interrogatory No. 1, state:

DE022930.1                          -5-

(a)    the address of each plant where it was manufactured, processed or packaged;

(b)    whether you were the sole producer, manufacturer and/or distributor of the product and, if not:

(i)    the name and address of each other person, firm or other entity engaged in the production, manufacture and/or distribution of the product;

(ii)    whether any other manufacturer produced the product by virtue of a franchise or license from you;

(iii)    the persons or firms who produced the product for distribution in the United States; and

(iv)    the person or forms who produced the product for distribution in the State of Delaware.

**ANSWER: Objection, said interrogatory is overbroad, voluminous, compound, not limited in time, date, or scope, not reasonably calculated to lead to discoverable evidence and unable to be answered in its present form because of its vagueness. Without waiving these objections, and in an effort to be responsive, Ingersoll-Rand has numerous plants that produce numerous products. See also, Response to Interrogatory No. 1.**

4.    For each product identified in answer to Interrogatory No. 1, state:

(a)    how the product was sold and/or distributed for use in the United States and/or the State of Delaware;

(b)    identify all persons, firms or other entities to whom these products were sold or through whom they were distributed during the period from 1936 to 1980;

(c)    for each such person, firm or other entity identified in answer to subpart (b) above,

DE022930.1                                      -6-

state the following:

  (i)  the specific product sold and/or distributed;

  (ii)  the quantity of the product sold and/or distributed;

  (iii)  the dates which these products were sold, shipped and delivered to each entity;

 (d) identify each individual who has any knowledge of these sales and/or distribution and state with specificity and particularity the substance of each individual's knowledge; and

 (e) identify and produce all documents which refer, reflect or relate to all sales and/or distribution of each such product to each such entity identified above.

 **ANSWER: Objection, said interrogatory is overbroad, voluminous, compound, not limited in time, date, or scope, not reasonably calculated to lead to discoverable evidence and unable to be answered in its present form because of its vagueness.   Without waiving these objections, and in an effort to be responsive, see response to Interrogatory No. 1.**

5. For each product identified in answer to Interrogatory 1, state whether you engaged in any advertising program to promote the sale of that product and if so, state:

 (a) the name or description of each advertising media that you have used to promote the product during the period 1936 to 1980;

 (b) the name of each national magazine or periodical in which you have advertised the product during the period 1936 to 1980;

 (c) the date of each issue of such magazine or periodical in which such advertisement appeared;

 (d) the name and address of each newspaper in which it advertised the product during the period 1936 through 1980;

(e)     the date of each publication of each newspaper in which the advertisement appeared;

(f)     identify and produce each document which refers, reflects or pertains to each such advertisement which was published in each magazine, periodical and/or newspaper; and

(g)     state whether the advertising of the product was handled by an agency and if so, state the name and address of each advertising agency that handled any portion of the advertising of the product during the period 1936 through 1980.

**ANSWER: Ingersoll-Rand has never engaged in any advertising to promote the sale of asbestos products as it understands and believes this question calls for. See also response to Interrogatory No. 1.**

6.     For each product identified in answer to Interrogatory 1 which was distributed to a company that used said products in Delaware or was a distributor of said products in Delaware or was a distributor of said products for an area including Delaware or was a distributor of said products for an area including Delaware, state:

(a)     the name and address of the company;

(b)     whether the asbestos contained was tremolite, crodolite, crysotile, amosite and/or anthophyllite asbestos and state the amount in terms of the percentage of the total asbestos contained in the product;

(c)     the total amount of asbestos contained in the product;

(d)     the exact formulation of the product, including the other non-asbestos ingredients thereof;

(e)     the name and address of each individual who participated in the formulation

DE022930.1                                    -8-

of such product;

(f)     the identity of each document which refers, reflects or relates to any information provided in the answer to this Interrogatory;

(g)     the names and addresses of the persons usually communicated with when dealing with said company;

(h)     identify the living individual most knowledgeable about the answers given above in 6(b), (c) and (d); and

(i)     identify the living individual most knowledgeable about distribution of the above products in Delaware and in an area of which Delaware was a part.

ANSWER: Defendant's records are not maintained in a manner that if, given a specific site, Defendant can state whether products with a purchased internal encapsulated asbestos containing part(s) was supplied to that location.

Further, Defendant does not maintain its records in a manner to respond to a particular method used in the sale of its goods. Pursuant to the corporate document retention policy, sales related records are generally destroyed within seven (7) years. The documents retention policy has been in effect since at least July 1, 1974. Records have been destroyed or discarded through the normal course of business activities but the exact date and location of the destruction or discard, the custodian and location of the records prior to destruction or discard, and the identity of persons who ordered, authorized or supervised any such destruction or discard are unknown at this time.

7.     With regard to each form of asbestos fibers identified in the answer to Interrogatory 6, state:

(a)    where it was purchased, if it was not purchased, where it was obtained;

(b)    from whom it was purchased; and

(c)    the manner in which it was received, stored and used in the production of the product.

**ANSWER: Objection, this Interrogatory assumes statements not in evidence as there is no interrogatory response that identifies any asbestos fibers. Further, Ingersoll-Rand has nothing and has never had anything to do with "asbestos fibers" as it understands and believes this term is defined. See also Response to Interrogatory No. 1.**

8.    If you manufacture any insulation products which are commonly used by insulators and which contain asbestos:

(a)    describe how the products listed in (b) are cut, shaped, mixed and applied on the jobs giving particular reference as to whether or not the materials have to be sawed or cut on the job, blown into confined areas, or mixed with water into a cement or paste;

(b)    state if there is any way known to you that the products listed below can be used and applied without the worker inhaling any of the asbestos dust or fibers:

(i)    asbestos cement, asbestos finishes;

(ii)    asbestos pipe covering;

(iii)    asbestos bricks or block;

(iv)    asbestos sheeting;

(v)    asbestos insulation used to cover extremes of heat as well as cold;

(vi)    asbestos insulation in loose form which may be blown into homes or buildings;

DE022930.1                                    -10-

(vii)    asbestos in spray form;

(viii)    asbestos mineral in fiber form or particulate form;

(ix)    asbestos millboard, rope, gaskets, paper gloves or blanket;

(c)    did your company buy any products listed in (b) above from other manufacturers and relabel it or have it labeled for your company?

(d)    did your company produce any products within the list in (b) above for other companies? If yes, which products and for whom;

(e)    whether prior to distributing the product, you altered it in any manner from the form in which you received it from the source and if so, what type of alterations or modification were made by you; and

(f)    whether prior to distribution the product you re-packaged or in any way altered the packaging or labeling of the product after receiving it from the source, and if so, what alterations were made by you.

**ANSWER: Not applicable. Ingersoll-Rand has not and has never manufactured such products. See also Response to Interrogatory No. 1.**

9.    For each product listed in answer to Interrogatory 1, describe each end use for which each such product was intended to be used by the general industry and for each such use:

(a)    describe the form of the product when so used;

(b)    describe the process and/or method by which the product would be applied for each such use;

(c)    describe the equipment to be used to apply the product for each such use;

(d)    identify each document that refers, reflects or relates to any information and

state the full substance of the information supplied;

(e)     as to any information received orally in answer to any Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Not applicable. <u>See</u> also Response to Interrogatory No. 1.**

10.     State whether any of the equipment identified in answer to Interrogatory No. 9(c) was manufactured by you or any parent or subsidiary company or related company.

**ANSWER: Not applicable.**

11.     If any piece of equipment identified in answer to Interrogatory No. 9(c) was invented, developed or first made by you or any person associated with you or related company or association, state:

(a)     when it was invented, developed or made;

(b)     the identity of each individual who participated therein and describe in detail the extent of his participation;

(c)     the identity of each document which reflects, refers or relates to any information set forth in answer to this Interrogatory; and

(d)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Not applicable.**

12.     State whether you or any person associated with you or any related company or association invented, developed or made any change and/or improvement in any piece of equipment identified in answer to Interrogatory No. 9(c) and if so:

(a)     describe the change and/or improvement made;

DE022930.1                              -12-

(b)     state when it was made;

(c)     identify each individual who participated therein and describe in detail the extent of his participation;

(d)     identify each document which reflects, refers or relates to any information set forth in answer to this Interrogatory; and

(e)     as to any information received orally in answer to this Interrogatory, identify each person who has supplied such information and state the full substance of the information supplied.

**ANSWER: Not applicable.**

13.     For each process and/or method identified in answer to Interrogatory 9(b), state whether it was developed by you or a parent or subsidiary or related company.

**ANSWER: Not applicable.**

14.     For each process and/or method identified in answer to Interrogatory No. 9(b) developed or first made by your or any person associated with you or any related company or association, state:

(a)     describe the change and/or improvement made;

(b)     state when and where it was made;

(c)     identify each individual who participated therein and describe in detail the extent of his participation;

(d)     identify each document which reflects, refers or relates to any information set forth in answer to this Interrogatory;

(e)     as to any information received orally in answer to this Interrogatory, identify

DE022930.1                                    -13-

each person who supplied such information and state the full substance of the information supplied; and

    (f)    identify the living person who has the most knowledge of matters discussed herein.

**ANSWER: Not applicable.**

15.    State whether you or any person associated with you or any related company or association developed or made any change and/or improvement in any process and/or method identified in answer to Interrogatory 9(b), and if so:

    (a)    describe the change and/or improvement made;

    (b)    state when and where it was made;

    (c)    identify each individual who participated therein and describe in detail the extent of his participation;

    (d)    identify each document which reflects, refers or relates to any information set forth in answer to this Interrogatory; and

    (e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Not applicable.**

16.    For each product identified in answer to Interrogatory No. 1, describe what, if any, tests were made to determine the safety of said product and:

    (a)    state when and where each such test was made;

    (b)    describe the results of each such test;

    (c)    identify each individual who participated therein and describe in detail the

DE022930.1               -14-

extent of his participation;

    (d)    identify each document which reflects, refers or relates to any information set forth in answer to this Interrogatory; and

    (e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Objection, said Interrogatory is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant admissible evidence. Defendant further objects to this interrogatory as argumentative to the extent that it implies its purchased internal encapsulated asbestos-containing component parts that may have been incorporated into its products were not safe, would be hazardous to people, or that any products sold by it would expose workers to harmful asbestos dust or fiber levels. Defendant further objects as argumentative to the extent this interrogatory implies it was under any obligation to test or evaluate anyone else's asbestos-containing products for any reason. Without waiver of said objections, Defendant states no tests concerning potential health hazards were conducted by this Defendant. Ingersoll-Rand is generally aware of numerous studies and tests conducted by others which indicate that encapsulated, chrysotile asbestos-containing products pose no significant health risks.**

    17.    For each process or method identified in answer to Interrogatory No. 9(b), describe what, if any, tests were made to determine the safety of said process or method and:

    (a)    state when and where such test was made;

    (b)    describe the results of each such test;

    (c)    identify each individual who participated therein and describe in detail the

DE022930.1                  -15-

extent of his participation;

(d)    identify each document which reflects, refers or relates to any information set forth in answer to this Interrogatory; and

(e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER: See Response to Interrogatory No. 16.

18.    For each piece of equipment identified in answer to Interrogatory No. 9(c), describe what, if any, tests were made to determine the safety of said equipment and:

(a)    state when and where each such test was made;

(b)    describe the results of each such test;

(c)    identify each individual who participated therein and describe in detail the extent of his participation;

(d)    identify each document which reflects, refers or relates to any information set forth in answer to this Interrogatory; and

(e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER: See Response to Interrogatory No. 16.

19.    For each label, brochure, or other written material describing or relating to the use of each product identified in answer to Interrogatory No. 1 produced by you or any person associated with you or any related company or association:

(a)    describe its contents;

(b)    state when, where, how and to whom it was distributed;

(c)    state the manner in which it was placed on or in the product container or whether it was separate from the product container, or whether it was separate from the product or container;

(d)    state whether any written, printed or graphic matter was present to warn of any harmful ingredient it might contain. If so, state:

(i)    whether the signal word, i.e., "danger", "warning", or "caution" was present;

(ii)    whether the signal word was printed in boldface, capital letters or different colored inks. Which?

(iii)    the wording of all directions and/or instructions pertaining to any method of use to avoid any hazard;

(e)    identify each individual who participated in the writing of the label, brochure or other written materials and described in detail the extent of his participation; and

(f)    identify each document which reflects, refers or relates to the information contained on the labels, brochures, or other written materials and/or the decision to include such information.

**ANSWER: Relevant Product brochures are available for inspection at the law firm of counsel for Ingersoll-Rand. By providing these Product Brochures for review and inspection, Defendant in no way represents that these specific brochures involve equipment that definitively incorporated purchased internal encapsulated asbestos-containing components.**

20.    For each product identified in answer to Interrogatory 1, state whether warnings of any harmful or potentially harmful effects of the product were printed on the cartons or packing cases

DE022930.1                              -17-

in which individual containers were packed, and if so:

      (a)     state the printed warnings' contents;

      (b)     state when the warning was used;

      (c)     describe the manner in which it was placed on or in the product container;

      (d)     identify each individual who participated in writing of the label or brochure and describe in detail the extent of his participation;

      (e)     identify each document which reflects, refers or relate to the information contained on the cartons or packing cases and the decision to include that information; and

      (f)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER: Defendant objects to this interrogatory as it seeks information which is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant admissible evidence. Defendant further objects to this interrogatory as argumentative to the extent that it implies that it either has or was under a duty to provide some sort of caution, warning, labels or hazard statement or explanation for the purchased internal encapsulated asbestos-containing component parts that may have been incorporated into its products or that such products would be hazardous to people, or that any products sold by it would expose workers to harmful asbestos dust or fiber levels. Without waiving said objections, Defendant states that since it did not manufacture asbestos-containing products, no warnings of any kind concerning potential health hazards related to asbestos were promulgated by this Defendant. Ingersoll-Rand is generally aware of numerous studies and tests conducted by others which indicate that encapsulated, chrysotile asbestos-containing

DE022930.1                                    -18-

**products pose no significant health risks.**

21.    For each label, brochure, or other written material describing or relating to each process or method identified in answer to Interrogatory 9(b) produced by your or any person associated with you or any related company or association, and for each such label, brochure or written material:

(a)    describe its contents;

(b)    state when, where, how and to whom it was distributed;

(c)    state whether any written, printed or graphic matter was present to warn of any harmful ingredient it might contain. If so, state:

(i)    whether a signal word, i.e., "danger", "warning" or "caution" was present;

(ii)    whether the signal word was printed in boldface, capital letters or different colored inks and if so, which one;

(iii)    the wording of the statements describing any hazard;

(iv)    the wording of all directions and/or instructions pertaining to any method of use to avoid hazard;

(d)    identify each individual who participated in the writing of the label, brochure or other written materials and describe in detail the extent of his participation; and

(e)    identify each document which reflects, refers or relates to the information contained on the labels, brochures, or other written materials and/or the decision to include such information;

**ANSWER:    Not applicable.**

DE022930.1                                    -19-

22.    For each label, brochure or other written material describing or relating to equipment identified in answer to Interrogatory No. 9(c), produced by you or any person associated with you or any related company or association and for each such label, brochure or written material:

(a)    describe its contents;

(b)    state when, where, how and to whom it was distributed;

(c)    state whether any written, printed or graphic matter was present to warn of any harmful ingredient it might contain. If so, state:

(i)    whether a signal word, i.e., "danger", warning" or "caution" was present;

(ii)    whether the signal word was printed in boldface, capital letters or different colored inks and if so, which one:

(iii)    the wording of the statements describing any hazard;

(iv)    the wording of all directions and/or instructions pertaining to any method of use to avoid any hazard;

(d)    the identity of each individual who participated in the writing of the label, brochure or other written materials and describe in detail the extent of his participation;

(e)    the identity of each document which reflects, refers or relates to the information contained on the labels, brochures, or other written materials and/or the decision to include such information; and

(f)    as to any information received orally in answer to this Interrogatory, identify each person who supplied information and state the full substance of the information supplied.

**ANSWER:  Not applicable.  See also Response to Interrogatory No. 19.**

DE022930.1                           -20-

23. With regard to the production, distribution and/or sale of each product identified in answer to Interrogatory 1, state whether you have ever been accused of violating any of the provisions of the Federal Labeling of Hazardous Substances Act and if so, state:

(a) the date of each indictment, complaint or information that accused you of such violation;

(b) the court in which the proceedings were instituted;

(c) the plea you entered;

(d) the verdict and/or judgment in each such case;

(e) the date set for trial of any pending case;

(f) identify each document which reflects, refers or relates to information pertaining to such accusation; and

(g) as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Upon information and belief, No.**

24. For each product identified in answer to Interrogatory 1, state whether you contend it is a "hazardous substance" as defined in 15 U.S.C. §1261(f) and if so, state with specificity and particularity the facts which you rely on to support that contention.

**ANSWER: See Response to Interrogatory No. 1.**

25. With regard to each product identified in answer to Interrogatory 1, state whether any quantity of that product has ever been seized by any agency of any government and if so:

(a) state the date of each such occurrence;

(b) state the name or description of the violations of which you were accused;

(c)     state the court in which the action was filed;

(d)     describe the judgment that was rendered;

(e)     state the date that has been set for trial of any pending case;

(f)     identify each document which reflects, refers or relates to information pertaining to such seizure; and

(g)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Objection, overbroad, unduly burdensome and not reasonably calculated to lead to discoverable evidence. Without further particulars said interrogatory is unintelligible and unable to be answered.**

26.     State whether you have ever been the subject of any investigation or accusation by any governmental agency concerning the provisions of the Occupational Safety & Health Act of (1970) (P.L. 91-596, 29 U.S.C. §651 et seq.) If so, state:

(a)     the date of such investigation, accusation, or other administrative or judicial procedure or action;

(b)     the administrative agency or court in which any proceedings arising from such investigation or accusation were heard or instituted;

(c)     the determination and results of any such accusation or action;

(d)     the identity of each document which refers or relates to information in answer to this Interrogatory; and

(e)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

DE022930.1                          -22-

ANSWER: Upon information and belief, no.

27.    State what action, if any, you have taken since 1935 to reduce or eliminate any risk or occupational disease or personal injury to those engaged in the manufacture of your asbestos products or to those using your asbestos products which arises from the inhalation of dust and fibers.

ANSWER: Not applicable. Ingersoll-Rand Company does not "manufacture" asbestos products as it understands and believes those terms are defined.

28.    Describe in full and complete detail each of the activities which you have undertaken with the intention of warning the public and give the inclusive dates of each such activity and:

(a)    identify each individual who participated therein and describe the nature of this participation;

(b)    identify each document which reflects, refers or relates to information pertaining to such warning; and

(c)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER: Defendant objects to this interrogatory as it seeks information which is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant admissible evidence. Defendant further objects to this interrogatory as argumentative to the extent that it implies that it either has or was under a duty to warn the public that the purchased internal encapsulated asbestos-containing component parts that may have been incorporated into its products would be hazardous to people, or that any products sold by it would expose workers to harmful asbestos dust or fiber levels. Without waiving said objections, Defendant states that since it did not manufacture asbestos-containing products,

DE022930.1                                -23-

no warnings of any kind concerning potential health hazards related to asbestos were promulgated by this Defendant. Ingersoll-Rand is generally aware of numerous studies and tests conducted by others which indicate that encapsulated, chrysotile asbestos-containing products pose no significant health risks.

29.    Have you or any of your companies conducted any studies concerning the effects of inhalation of asbestos dust or fibers by one using or being exposed to any of the asbestos materials manufactured by you and/or any of your companies?  In answer to this question, please state:

(a)    the date, nature and location of your studies;

(b)    the name or names of the persons conducting the studies and their address and describe in detail the extent of their participation;

(c)    the purpose of the studies;

(d)    the identity of each document which refers or relate to any information set forth in answer to this Interrogatory; and

(e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER: Not applicable. Ingersoll-Rand Company does not "manufacture" asbestos materials as it understands and believes those terms are defined.

30.    Have you or any of your companies conducted any studies designed to minimize or eliminate the inhalation of asbestos dust and fibers by those exposed to the use of any of the products containing asbestos materials manufactured by your or any of your companies?  If so:

(a)    the date, nature and location of your studies;

(b)    the name or names of the persons conducting such studies and their address

DE022930.1                        -24-

and describe in detail the extent of this participation;

(c) state what action, if any, was taken based upon such studies in an effort to minimize or eliminate the effects of inhalation of asbestos dust or fibers upon those using or being exposed to the dust and fibers contained in such products as manufactured by your company;

(d) identify each document which refers or relates to any information set forth in answer to this Interrogatory; and

(e) as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: No.**

31. What technique, if any, did and/or do you use to make dust samplings in the manufacturing and packaging production environment or at job sites where your materials are used?

(a) set forth in detail the technique used, when it was commenced and when, if ever, it was concluded:

(b) state the purpose for administering such samplings;

(c) state the results of such samplings;

(d) state what action, if any, has been taken in response to the findings as to the dust samples;

(e) identify each document which refers or relates to such sampling;

(f) as to any information received orally in answer to his Interrogatory, identify each person who supplied such information and state the full substance of the information; and

(g) identify the living person who has the most knowledge of matters discussed herein.

DE022930.1                                        -25-

ANSWER: None.

32.     State what, if any, safety measures were taken by you as to your employees during the processing, manufacturing and packaging of products containing asbestos including but not limited to products to the duPont Company. If any such safety measures were taken, state:

(a)     the reason for the use of such measures, equipment or clothing;

(b)     identify each document relating to safety procedures taken by employees or plant personnel in the manufacture, processing and packaging of such products; and

(c)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information.

ANSWER: Objection, said interrogatory seeks information that is not relevant to this matter and is harassing in nature. Moreover, Ingersoll-Rand objects to this interrogatory in that plaintiff(s) was not an employee of Ingersoll-Rand and any safety measures taken on behalf of its employees has no bearing or effect on the plaintiff(s) and the claims made herein. See also Preliminary Statement (g).

Defendant objects to this interrogatory as it seeks information which is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant admissible evidence. Defendant further objects to this interrogatory as argumentative to the extent that it implies that it either has or was under a duty to provide safety measures for its employees that the purchased internal encapsulated asbestos-containing component parts that may have been incorporated into its products would be hazardous to people, or that any products sold by it would expose workers to harmful asbestos dust or fiber levels. Without waiving said objections, Defendant states that since it did not manufacture asbestos-containing

products, no safety measures of any kind concerning potential health hazards related to asbestos were promulgated by this Defendant. Ingersoll-Rand is generally aware of numerous studies and tests conducted by others which indicate that encapsulated, chrysotile asbestos-containing products pose no significant health risks. Not applicable. Ingersoll-Rand did not manufacture, process or package asbestos.

33.    State:

(a)    knowledge as to any respirator or other breathing device which was on the market during the relevant period which would prevent the inhalation of asbestos dust and fibers;

(b)    a detailed description of such respirator or other breathing device, together with all information as to how such device prevents the inhalation of asbestos dust and fibers;

(c)    what tests, if any, were conducted, by whom and where, with regard to the effectiveness of any such device;

(d)    identify each document in any Defendant's possession which refers or relates to the subject matter of this Interrogatory; and

(e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Defendant has no such knowledge. See also Responses to Interrogatory Nos. 1 and 28. Further, Ingersoll-Rand objects as this Interrogatory seeks information which is clearly not relevant to the within action.**

34.    Have you or anyone on your behalf conducted or had conducted any investigation on the statistical and/or epidemiological relationship between the use of any product identified in answer to Interrogatory 1 and the contraction by humans or animals of cancer, including, but not limited to,

DE022930.1                                    -27-

mesothelioma? If so:

      (a)     identify each person participating in such investigation and describe in detail the extent of this participation;

      (b)     state when the investigation was conducted;

      (c)     identify the person or persons who authorized the investigation

      (d)     identify each document which refers or relates to any information set forth in answer to this Interrogatory; and

      (e)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Defendant does not consider itself competent to offer opinions as to "causal relationships", if any, between various substances and alleged disease processes. Ingersoll-Rand defers to the reasoned judgment and opinions of medical experts on all such questions of human disease, causes and diagnoses. However, Ingersoll-Rand is aware that there are substantial differences in asbestos-containing products. Differences in the composition of the products play a large role in the friability and consequent respirability of asbestos fibers contained within such products. Where fibers are encapsulated, fiber emission is negligible, if any. Moreover, fiber type is significant inasmuch as many experts conclude that chrysotile asbestos is not a causative agent of certain asbestos-related diseases such as mesothelioma. Also, chrysotile asbestos is more rapidly repelled and cleared by the human respiratory system, without resulting in injury, than are amphibole types of asbestos. Furthermore, virtually any product is "dangerous" to health if improperly used. The employers of Plaintiffs had varying industrial hygiene and work practices. Plaintiffs may have worked in different crafts and,**

consequently, varied in the frequency, regularity, length, proximity and extent, of exposure, if any, to different asbestos-containing products. The circumstances of exposure and individual proclivities have substantial bearing on the potential for development of asbestos-related disease. Occasional bystander exposure to encapsulated chrysotile asbestos-containing products poses no risk. The medical probability of an asbestos-related disease and a worker having brief, intermittent and indirect exposures to asbestos-containing insulation materials is considerably diminished in degree and relative risk from that of an individual who works throughout out his/her career on a daily basis with asbestos-containing insulation products. Ingersoll-Rand will rely upon its experts designated in the course of the litigation.

35.    Have your or anyone on your behalf conducted or had conducted any investigation of the statistical and/or epidemiological relationship between the use of any product identified in answer to Interrogatory 1 and the contraction by humans of pulmonary asbestosis? If so:

(a)    identify each person participating in such investigation and describe in detail the extent of his participation;

(b)    state when the investigation was conducted;

(c)    identify each document which refers or relates to any information set forth in answer to this Interrogatory; and

(d)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER: See Response to Interrogatory No. 34.

36.    Describe in detail all written and oral reports including those reports originating from users of any of the products identified in answer to Interrogatory 1 including doctors, and employees

DE022930.1                                  -29-

and agents of the Defendants concerning any relationship between the use of these products and the development of pulmonary asbestosis in humans or animals:

(a)    identify all persons making said reports and to whom said reports were made;

(b)    state whether any report or series of reports initiated changes and/or re-evaluation of the production, sale or use, or recommendations for use, of any of those products;

(c)    identify each document which refers or relates to any information set forth in answer to this Interrogatory; and

(d)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Objection, said interrogatory is overbroad, voluminous, compound, not limited in time, date, or scope, not reasonably calculated to lead to discoverable evidence and unable to be answered in its present form because of its vagueness. Without waiving the objection, and in an effort to be responsive, see Response to Interrogatory No. 34.**

37.    Describe in detail all written or oral reports including those reports originating from users of any of the products identified in answer to Interrogatory 1, including doctors, employees and agents of the Defendants concerning any relationship between the use of any of those products and the development of cancer, including, but not limited to, mesothelioma in humans or animals:

(a)    identify all persons making said reports and to whom said reports were made;

(b)    state whether any reports or series or reports initiated changes and/or re-evaluation of the production, sale or use, or recommendations for use, of any of those products;

(c)    identify each document which refers or relates to any information set forth in answer to this Interrogatory; and

DE022930.1                                   -30-

(d)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Objection, said interrogatory is overbroad, voluminous, compound, not limited in time, date, or scope, not reasonably calculated to lead to discoverable evidence and unable to be answered in its present form because of its vagueness. Without waiving the objection, and in an effort to be responsive, See Response to Interrogatory No. 34.**

38.     For each product identified in answer to Interrogatory 1, state whether the production and/or sale of the product has been discontinued and if so:

(a)     state when it was discontinued;

(b)     state with specificity and particularity all the reasons for the discontinuance;

(c)     identify each individual who participated in the decision to discontinue production and/or sale and describe in detail the extent of his participation;

(d)     identify all documents which reflect, refer or relate to each such discontinuance; and

(e)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: See Response to Interrogatory No. 1.**

39.     For each product identified in answer to Interrogatory 1, state whether the production and/or sale of that product has been limited and/or curtailed or reduced and if so:

(a)     describe how it was so limited or curtailed or reduced;

(b)     state when it was so limited, curtailed or reduced;

(c)     state with specificity and particularity all of the reasons for the limitation,

DE022930.1                          -31-

curtailment or reduction;

(d)    identify each individual who participated and the extent of his participation in the decision to so limit, curtail or reduce production and/or sale;

(e)    identify each individual which reflects, refers or relates to the limitation, curtailment or reduction and/or the decision to implement the limitation, curtailment or reduction; and

(f)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER:  See Response to Interrogatory No. 1.

40.    Do you contend that each of the products identified in Interrogatory 1 do not or did not create any risk to one who applied or used the product?

(a)    if so, state the factual basis for each such contention;

(b)    if not, state:

(I)    the degree and kind of risk which is created by such use;

(ii)    the conditions under which such risk is created, increased or decreased;

(iii)    identify each document which reflects, refers to, or relates to your answers to this Interrogatory; and

(iv)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

ANSWER:  Objection, said Interrogatory is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant admissible evidence. Defendant further objects to this interrogatory as argumentative to the extent that it implies

its purchased internal encapsulated asbestos-containing component parts that may have been incorporated into its products would be hazardous to people, or that any products sold by it would create any risk to anyone who uses its product. Without waiving the objections, Ingersoll-Rand is generally aware of numerous studies and tests conducted by others which indicate that encapsulated, chrysotile asbestos-containing products pose no significant health risks.

41.     Do you contend that it was not your responsibility to warn workers of the risk of harm arising from the use of your product or of the danger of asbestos to their health?

(a)     state the factual basis for such response;

(b)     identify each document which reflects, refers or relates to your answer to this Interrogatory; and

(c)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: See Response to Interrogatory No. 40.**

42.     Do you contend that it was only the responsibility of the employing company involved, or others, to warn the workers of the risk of harm arising from the use of your product or of the danger of asbestos to their health?

(a)     State the basis for such a contention,

(b)     Identify which other were so responsible

(c)     Identify each document which reflects, refers or relates to you answer to this interrogatory?

(d)     As to any information received orally in answer to this interrogatory, identify each

DE022930.1                                    -33-

person who supplied such information and state the full substance of the information supplied.

**ANSWER: Ingersoll-Rand cannot comment on what the responsibility of other parties was or is. However, in an effort to be responsive, <u>see</u> Response to Interrogatory No. 40.**

43.    Do you contend that the danger to any Plaintiff was not foreseeable at the time the products alleged to have caused his injuries were sold?  If so, as to each Plaintiff:

    (a)    state the factual basis for such contention;

    (b)    identify each document relied upon in support of such contention; and

    (c)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER:  Defendant objects as this Interrogatory calls for speculation to which it declines to respond.  <u>See</u> also Response to Interrogatory No. 42.**

44.    Do you contend that the danger from the use by Plaintiffs of products containing asbestos was obvious?  If so, as to each Plaintiff:

    (a)    state the factual basis for such contention;

    (b)    identify all documents relied upon in support of such contention; and

    (c)    as to any information received orally in answer to this Interrogatory, identify each person who supplied this information and state the full substance of the information supplied.

**ANSWER:  All information regarding defenses raised will be exchanged on a case-by-case basis pursuant to Delaware Rules.**

45.    Do you contend that Plaintiffs knew, understood and appreciated the danger arising from their contact with asbestos which you mined or distributed or products containing asbestos which you manufactured or distributed?  If so, as to each Plaintiff:

DE022930.1                                  -34-

(a)     state the factual basis for such contention;

(b)     identify each document relied upon in support of such contention; and

(c)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: All information regarding defenses raised will be exchanged on a case-by-case basis pursuant to Delaware Rules.**

46.     Do you contend that Plaintiffs voluntarily and reasonably exposed themselves to the danger arising from their contact with asbestos which you mined or distributed or products containing asbestos which you manufactured or distributed? If so, as to each Plaintiff:

(a)     state the factual basis for such contention;

(b)     identify each document relied upon in support of such contention; and

(c)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: All information regarding defenses raised will be exchanged on a case-by-case basis pursuant to Delaware Rules.**

47.     Do you contend that Plaintiffs used any asbestos which you mined or distributed or any products containing asbestos which you manufactured or distributed in other than their usual, customary and expected manner? If so, as to each Plaintiff:

(a)     state the name and chemical composition of the product claimed to have been used in other than its usual, customary and expected manner;

(b)     state in detail the manner in which Plaintiffs used said product in other than its usual, customary and expected manner;

DE022930.1                                -35-

(c)     identify each document relied upon in support of such contention; and

(d)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: All information regarding defenses raised will be exchanged on a case-by-case basis pursuant to Delaware Rules.**

48.     With regard to each product identified in answer to Interrogatory 1 or 8, state whether you have ever been named as a Defendant in any other civil action, including workmen's compensation actions, filing of workmen's compensation consent agreements, or other proceedings, to recover damages for injuries resulting from asbestos and asbestos-related pleural disease received as a result of using that product and if so, for each proceeding:

(a)     state the name and address of each Plaintiff;

(b)     state the name and address of each Co-Defendant;

(c)     state the date if was filed;

(d)     state the name of the Court in which it was filed;

(e)     describe the judgment rendered;

(f)     state the date that has been set for trial of any case still pending;

(g)     describe the terms of any settlement reached before or during trial;

(h)     state whether any appeal is pending from any judgment that has been rendered;

and

(i)     state the exact nature of the condition alleged in such action to have resulted from the Plaintiffs' use of or contact with said product and identify the product involved;

**ANSWER: Defendant objects to this interrogatory in that it is over broad and unduly**

DE022930.1                            -36-

burdensome and seeks information which is not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Ingersoll-Rand submits that, to the best of its knowledge, it has never mined, milled, manufactured, sold or distributed asbestos products or asbestos-containing products as it believes these terms are defined. Without waiver of same Ingersoll-Rand has been named in many suits, further particulars are unknown at this time and are available to plaintiff through public records.

49.    With regard to each product identified in answer to Interrogatory 1 or 8, state whether you have ever received a notice of injury to any other person as a consequence of a condition of asbestosis, asbestos-related pleural disease and cancer resulting from the use of that product and, if so:

(a)    state the date it was received;

(b)    state the name and address of injured person;

(c)    describe in detail the complaint;

(d)    identify each document which reflects, refers or relates to any information pertaining to that complaint; and

(e)    as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER:  See Response to Interrogatory No. 48.**

50.    With regard to each product identified in answer to Interrogatory 1 or 8, state whether you have ever been named as a Defendant in any other action to recover damages for injuries

DE022930.1                              -37-

resulting from cancer, including, but not limited to, mesothelioma received as a result of using that product and if so:

(a)    state the name and address of each Plaintiff;

(b)    state the name and address of each Co-Defendant;

(c)    state the date it was filed;

(d)    state the name of the court in which it was filed;

(e)    describe the judgment rendered;

(f)    state the date that has been set for trial of any case still pending;

(g)    describe the terms of any settlement reached before or during trial; and

(h)    state whether any appeal is pending from any judgment that has been rendered.

**ANSWER: See Response to Interrogatory No. 48.**

51.    With respect to the period from 1950 through 1980, state the names, addresses and company title or position of each person who at any time during that period was in charge of the following activities with regard to each of the products identified in answer to Interrogatory 1 or 8:

(a)    production;

(b)    marketing;

(c)    labeling;

(d)    advertising;

(e)    product evaluation;

(f)    research and development; and

(g)    distribution.

**ANSWER: Defendant objects to this interrogatory in that it is overly broad, unduly**

DE022930.1                              -38-

burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, over the years Ingersoll-Rand has had numerous individuals employed by them in various capacities at various times. Without further specificity, Ingersoll-Rand is unable to respond to said request.

52.    Identify the living parties or persons who are the most knowledgeable about asbestos mined and products containing asbestos sold and/or distributed by you from 1936 to present. Identify all documents which relate to such sales and/or distribution.

ANSWER: See Preliminary Statement (a); Victor Weintraub.

53.    Have you or has anyone on your behalf attended and/or participated in any conference, seminar, lecture or symposium dealing with the hazards of using any product identified in answer to Interrogatory 1 or 8 or of asbestos in general and if so, state:

(a)    the date and place of such conference, seminar, lecture or symposium;

(b)    the person or persons conducting such conference, seminar, lecture or symposium;

(c)    the person or persons who attended on your behalf;

(d)    the subject matter of such conference, seminar, lecture or symposium;

(e)    the speakers and/or moderators at such conference seminar, lecture of symposium; and

(f)    whether any reports or memoranda were made concerning the subject matter of such conference, seminar, lecture or symposium, identifying each such report or memorandum.

ANSWER: Ingersoll-Rand has learned in the 1990s that two individuals signed into

DE022930.1                                                    -39-

the Saranac Lake Symposium of 1955, where it understands the health effects of exposure to asbestos were discussed, alleging that they were associated with Ingersoll-Rand. After diligently researching its employment and pension records, Defendant has determined that one of these individuals, a J. Wilson Young (deceased), worked at the Phillipsburg, New Jersey plant for Ingersoll-Rand. Further, Defendant would state that it has no information regarding the other individual or any individual of similar name as ever having been employed by Ingersoll-Rand. Defendant has no record or direct knowledge of participation in the referenced studies or receiving the results of studies or tests performed by the Saranac Lake Laboratory.

54.    Are you familiar with the hearing concerning the dangers of asbestos conducted in March, 1967 before the House of Representatives of the United States Congress Subcommittee on Labor? If so, identify those persons who are or were associated with you that were familiar with that hearing:

ANSWER: No.

55.    State when, if at all, you received knowledge of the following publications or matters discussed therein, who received such knowledge and identify all documents relating to such knowledge:

(a)    Fleischer, Viles, Gade & Drinker, "A Health Survey of Pipe-Covering Operations in Construction Naval Vessels," 28 J. Indus. Hyg. 9-16;

(b)    Selikoff, et al., "Asbestosis & Neoplasia," 42 Am. J. Med. (1967);

(c)    Selikoff, Church & Hammon, "The Occurrence of Asbestosis Among Industrial Insulation Workers," 132 Ann. New York Acad. Sc. 139 (1965);

DE022930.1                                      -40-

(d)     "Documentation of the Threshold Limit Values for Substances in Workroom Air," A.C.G.I.H. (3rd 1971);

(e)     "Threshold Limit Values for 1961," A.C.G.I.H. (1961);

(f)     1960 report by Dr. H. Montague Murray; and

(g)     1934 study by Dr. Anthony J. Lanza, Assistant Medical Director of Metropolitan Life Insurance Company.

**ANSWER: Upon information and belief, Defendant has no such knowledge.**

56.     Identify each publication contained in your research library, or otherwise in your custody, including, but not by way of limitation, your Research and Development Center, all medical journals, industrial medical journals, industrial hygiene journals, technical literature in the area of asbestos mining, manufacture, application and use, and governmental publications, dealing with occupational diseases arising from the manufacture and use of asbestos-containing products. As to all such publications, state the volumes which are in your custody and control, when each such volume was received, and the present location of such publications.

**ANSWER: Objection. This Interrogatory assumes the existence of facts not in evidence, inasmuch as Ingersoll-Rand had no such "research library" as it understands and believes that term is defined. Defendant further objects to this interrogatory in that it is overly broad, unduly burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence.**

57.     As to any threshold limit values published by the American Conference of Governmental Industrial Hygienists, state whether you have brought such information to the attention

of those using your products. If you have not done so, state the reasons why you have not done so.

ANSWER: Defendant objects to this interrogatory as it seeks information which is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of relevant admissible evidence. Defendant further objects to this interrogatory as argumentative to the extent that it implies that it had knowledge as to and was therefore under a duty to provide information to its customers about any alleged threshold limit value for asbestos-containing dust for purchased internal encapsulated asbestos-containing component parts that may have been incorporated into its products. Without waiver of said objections, Defendant states that Ingersoll-Rand did not manufacture its asbestos-containing products and no information concerning TLV was necessary or promulgated to its customers. Ingersoll-Rand is generally aware of numerous studies and tests conducted by others which indicate that encapsulated, chrysotile asbestos-containing products pose no significant health risks.

58.    Have you been:

(a)    a member of;

(b)    affiliated in any manner with;

(c)    or received reports; or

(d)    subscribed for reports or publications to the Industrial Hygiene Foundation of Pittsburgh?

ANSWER: No.

59.    With regard to Interrogatory 58, what years did you participate under (a), (b), (c) or (d)?

ANSWER: Not applicable.

DE022930.1                                    -42-

60.   With regard to Interrogatory 58, do you have any documents obtained from the Industrial Hygiene Foundation?  If so:

(a)   list all such documents;

(b)   who currently has them in their possession;

(c)   when each was received; and

(d)   state the name of the individuals who received such documents or information contained in such documents.

**ANSWER:  Not applicable.**

61.   Have you received any reports or documents prepared by Metropolitan Life Insurance Company from 1929 to about 1960 concerning statistical and other studies of asbestos workers for Johns Manville?  If so, state:

(a)   the documents received;

(b)   who received them and when;

(c)   the current location of the documents.

**ANSWER: No.**

62.   State all chemical, industrial, medical or trade associations to which you have belonged since 1936.

**ANSWER:  Ingersoll-Rand states, based on information and belief, there were no corporate memberships in such "organizations", "groups", or "associations".  However, it is impossible to determine if any individual employees had individual memberships due to the large number of individuals employed by Ingersoll-Rand at its many divisions and plants over the time period to which this inquiry applies.**

DE022930.1                                    -43-

63.    With regard to the associated enumerated in the answer to Interrogatory 62, state:

(a)    the names of each individual associated with the answering Defendant since that date who have had dealings with each said association;

(b)    Describe the nature of their dealings with each such association;

(c)    state their last known address; and

(d)    if still employed, their current job and title.

**ANSWER: Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence. See also Response to Interrogatory No. 62.**

64.    Name each corporate officer and/or member of corporate management who attended any meeting and/or conference concerning the health and medical aspects of asbestos and/or the use of products containing asbestos, and for each person identified, state the nature of his participation in each such meeting or conference.

**ANSWER: Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence. See also Response to Interrogatory No. 62.**

65.    State the sources of all products containing asbestos which have been incorporated in any product manufactured by you which have been distributed, sold and/or utilized from 1936 to 1980:

(a)    state the names of all individuals associated with the above stated sources who

DE022930.1                                -44-

dealt with or handled your account;

(b)     identify any such document which refers, reflects or relates to any information provided in answer to this Interrogatory; and

(c)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence. See also Response to Interrogatory No. 1.**

66.     For each product identified in the answer to Interrogatory 1 or 8 which you distributed, identify the source from which you obtained the product:

(a)     state the names of all individuals associated with the above-stated sources who dealt with or handled your account and specify who handled your account for products distributed to Delaware; and

(b)     identify any such documents which refer, reflect or relate to any information provided in answer to this Interrogatory.

**ANSWER:  See Response to Interrogatory No. 1 and 8.**

67.     State the names of all individuals associated with you who had any dealings with the requisition and/or procurement of asbestos or products containing asbestos as indicated in answer to Interrogatories 65 and 66 and for each such person:

(a)     identify the nature of his association(s), the locations and the dates of their occurrence;

DE022930.1                            -45-

(b)     identify each document which refers, reflects or relates to any information provided in answer to this Interrogatory; and

(c)     as to any information received orally in answer to this Interrogatory, identify each person who supplied such information and state the full substance of the information supplied.

**ANSWER: See Response to Interrogatory No. 1.**

68.     State the names of all individuals who dealt with or handled the account with and/or made any sales to the employer of the Plaintiff of asbestos and/or products containing asbestos:

(a)     describe in detail the nature and dates of each such association with the said accounts; and

(b)     identify each document which refers, reflects or relates to any information provided in answer to this Interrogatory.

**ANSWER: Not applicable. See also Response to Interrogatory No. 1**

69.     Identify each individual whom you expect to call as an expert witness at the trial of this litigation and for each person identified:

(a)     the subject on which the expert is expected to testify and the substance of the facts and opinions to which he or she is expected to testify and a summary of the grounds for each opinion; and

(b)     identify each document referring, relating or containing any such facts and/or opinion and identify each individual having custody of each document identified.

**ANSWER: See Ingersoll-Rand's Expert Witness Disclosure.**

70.     Identify each individual who you have retained or employed or anticipate retaining or employing in any way in preparation of or anticipation of trial in this litigation who is not expected

DE022930.1                                        -46-

to be called as a witness at trial and for each such individual:

  (a)  state the substance of any facts or opinion which he or she has discussed with any agent, employee or representative of the answering Defendant, together with a summary of the grounds for each opinion;   }

  (b)  identify each documents referring to or containing such facts and/or opinions, and identify each person having custody of each document identified.

  **ANSWER: Objection. The information sought in this Interrogatory is violative of Rule 26(b), and is protected by the attorney/client privilege. Without waiver of same, see all proper discovery exchanged thus far in this action on behalf of Ingersoll-Rand.**

71.  State the names, last known addresses and telephone numbers of every person who you intend to call as a witness at the trial of this litigation:

  (a)  state the substance of any fact or opinion which he or she has discussed with any agent, employee or representative of the answering Defendant, together with a summary of the grounds for each opinion;

  (b)  identify each document referring to or containing such facts and/or opinions, and identify each person having custody of each document identified; and

  (c)  specify witnesses you intend to use at the trial of this case with respect to the occurrences and/or cause of Plaintiffs' illnesses or with respect to the claimed damages or with respect to your liability.

  **ANSWER: See Ingersoll-Rand's Witness Disclosure.**

72.  State:

  (a)  whether your corporation is insured;

DE022930.1        -47-

(b)     if so, the limits of coverage;

(c)     the name of the insurance company; and

(d)     whether this claim has been accepted or whether a letter of intent to deny coverage has been received.

**ANSWER: Ingersoll-Rand is a publicly traded company. See all applicable filings with the Security and Exchange Commission.**

73.     In whose possession are your and your predecessors' annual reports from 1936 to the present?  Produce such reports.

**ANSWER: Ingersoll-Rand is a publicly traded company. See all applicable filings with the Security and Exchange Commission.**

74.     Describe in detail your policy with respect to the destruction of records pertaining to each of the products identified in answer to Interrogatory 1:

(a) identify all documents pertaining to your policy, if any, regarding the destruction of such records;

(b)     identify the person or persons having custody of such policy documents;

(c)     identify the person or persons in charge of destroying records pertaining to each such product;

(d)     identify each document which refers reflects or relates to any information provided in Answer to this Interrogatory; and

(e)     describe what steps, if any, you have taken since the institution of this action or other actions involving asbestos to prevent the destruction of any documents relating to asbestos.

**ANSWER: See Interrogatory No. 1.**

DE022930.1                              -48-

75.    State the names of all individuals who aided in the preparation of these answers and for each person state:

(a)    which Interrogatories they helped prepare or the particular subject area for which they supplied information;

(b)    their current position with the company; and

(c)    their current or last known home and business address and phone numbers.

**ANSWER:  See Preliminary Statement (a); Victor Weintraub.**

76.    State all processes used by Plaintiff's employer known to any Defendants where asbestos was an ingredient.

**ANSWER:  Unknown and not applicable as to Ingersoll-Rand.  Defendant reserves its right to supplement said response if and when any information becomes available.**

77.    State all uses of asbestos insulation by Plaintiff's employer, known to any Defendant:

(a)    types of asbestos insulation used;

(b)    manufacturer and/or brand names;

(c)    locations in said plants where said insulation was used; and

(d)    the person most knowledgeable in said corporation about the purchasing of insulation by distributors that covered the states of New Jersey, Delaware, Pennsylvania and Maryland.

**ANSWER:  Unknown and not applicable as to Ingersoll-Rand. Defendant reserves its right to supplement said response if and when any information becomes available.**

78.    If you have insurance including secondary or tertiary coverage, state:

(a)    policy number and amount;

DE022930.1                              -49-

(b)     company underwriting said insurance; and

(c)     the name of your contact in said company concerning asbestos claims.

**ANSWER: Defendant does not presently have the information requested. However, in an effort to be responsive, this defendant had coverage for some of time periods alleged in plaintiffs' complaint. The policies differed as to their wording and under what conditions coverage for claims would be provided. Thus, subject to additional information, this defendant believes there is sufficient insurance coverage in sufficient quantities for claims arising out of this litigation, should any judgment be rendered.**

79.     State whether you have entered into any agreement, either oral or written, with any other Defendant in this action regarding:

1.     settlement or non-settlement and/or;

2.     allocation of damages should the Plaintiffs prevail on liability.

If the answer is "Yes" to either of the above, state the substance of each such agreement and such parties who have entered into this agreement:

(a)     identify those persons who participated in the preparation of each such agreement and describe in detail the nature and extent of his participation; and

(b)     identify each document which contains, refers or relates to each such agreement.

**ANSWER: Defendant objects to this interrogatory in that it is overly broad, unduly burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiver of said objection, no.**

DE022930.1                                                                -50-

80.   Do you or your attorneys know of any person or persons not listed in the preceding answers having knowledge of facts relevant to the allegations in this lawsuit, including witnesses to the accident, injury, illnesses, etc. in question?  If yes, please state the names, addresses, home telephone numbers, places of employment, relationship to you, the present whereabouts of all such persons, and which of said persons you intend to produce as witnesses in the trial for this action.

**ANSWER: No. See also Preliminary Statements.**

81.   Do you or your attorneys have any written statements which you have not previously produced in this suit from any persons having knowledge of facts relevant to the subject matter of this lawsuit, including witnesses to the accident, injury, illnesses, etc. in question?  If yes, please state the names, addresses, home telephone numbers, places of employment, relationship to you and the present whereabouts of all such persons.

**ANSWER: Objection, attorney/client privilege. Ingersoll-Rand further objects in that this interrogatory is overly broad, unduly burdensome, not limited to a particular time and scope and seeks information which is voluminous and not reasonably calculated to lead to the discovery of admissible evidence.  Without waiver of same, see all proper discovery exchanged thus far in this action on behalf of Ingersoll-Rand.**

82.   State whether you were a member of the Asbestos Information Association (A.I.A.) Or in any manner received information or participated in any of the Association's activities.

**ANSWER: No.**

83.   If your answer to any part of Interrogatory 82 is in the affirmative, please state:

(a)   the date, times and places of any A.I.A. meetings attended;

(b)   the date and time period during which you received any publication fo the

DE022930.1                              -51-

A.I.A.;

(c)    the names, address and telephone number of each and every person who attended such meetings and to whom any such publications were sent;

(d)    the nature of the information that was furnished at meetings or in such publications; and

(e)    name, address and telephone number of the present or last known custodian of any copies of the A.I.A. newsletters, correspondence or publications.

**ANSWER: Not applicable.**

84.    State whether you received a publication known as the "Asbestos Magazine".

**ANSWER: No.**

85.    If your answer to Interrogatory 84 is in the affirmative, please state:

(a)    the date and time periods during which you received such publication;

(b)    the frequency of receipt, e.g., regularly, occasionally, rarely, etc.;

(c)    the terms, circumstances or requirements of receipt of such publication, e.g., free, by subscription, distributed at meetings, etc; and

(d)    name, address and telephone number of the present or last known custodian of any copies of such magazine.

**ANSWER: Not applicable.**

86.    Does the answering Defendant have in its possession any medical records, not previously produced in this case relating to any of the Plaintiffs including, but not limited to, charts, x-rays, physical examination reports, summaries, tape recordings of interviews and any and all other records pertaining to the medical condition of the Plaintiffs? If so, Plaintiffs request that such records

DE022930.1                                    -52-

be produced in accordance with Rule 34.

**ANSWER: No. Said documents are within the possession of plaintiff.**

87.    With respect to each contention contained in your response to the Complaint, state

the following:

    (a)  identify which defense it relates to;

    (b)  each fact upon which your contention is based;

    (c)  the names and present or last known addresses and present or last known

employer of all persons having knowledge of any of the facts set out in answer to subparagraph (b)

hereof; and

    (d)  the description of designation of each document which in any way reflects,

relates or refers to any of the facts set out in answer to subparagraph (b) hereof.

**ANSWER: See Preliminary Statements and Objections.**

88.    Other than annual reports produced pursuant to No. 72 above, identify documents

which accurately reflect the following information as to the answering Defendant for each calendar

year since 1940:

    (a)  total net worth;

    (b)  profits;

    (c)  total earnings; and

    (d)  specific earnings attributed to the manufacture and/or distribution of any

products containing asbestos.

**ANSWER: Objection, this interrogatory is overly broad, unduly burdensome and not

reasonably calculated to lead to the discovery of admissible evidence. Without waiving the**

objection, Ingersoll-Rand is a publicly traded company. See all applicable filings with the

Security and Exchange Commission.

MARKS,
O'NEILL, O'BRIEN AND COURTNEY

By:    /s/Dawn C. Doherty
DAWN C. DOHERTY (No. 3164)
MEGAN T. MANTZAVINOS (No. 3802)
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
*Attorneys for Defendant Ingersoll Rand*

*Company*

Dated: February 24, 2004

DE022930.1                          -54-

# Exhibit O

A/TK 3/20/79

noco

**SMOCO**

INGERSOLL-RAND COMPANY
808 INDUSTRIAL DRIVE
ELMHURST, IL 60126

Purchase Order No. 807-7-8X252   57893

KELLER

Page 1 of 1

Show this number on all invoices, packages, shipping papers, and correspondence.

| Dates ► | Ordered | P.O. Issued | Material Required |
|---|---|---|---|
| | | 3/20/79 | 5/1/79 |

Send shipment to–

MANDAN REFINERY
P.O. BOX 549
MANDAN, N.D. 58554

| Ship Via | | | | | F.O.B. | | Freight Terms | | Payment Terms | | Sales Tax | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| P.P. | U.P.S. | Air | Pkg. R.R. Truck | | Origin | Destination | Collect | Prepay & Add | discount | within | Exempt | Taxable |
| | XX | | | | | | | XX | | days | | X |

| Item No. | Quantity | | Unit | Symbol No. | Description | Price |
|---|---|---|---|---|---|---|
| | Ordered | Received | | | | |
| 1 | 1 | | EA | | STATOS "HO" RAMS RING PRESSURE SWITCH MODEL 6L-K3, IN-2 PART NO. 1R64273XP503 FOR K2-A COMPRESSER | ENTER ORDER AND ADVISE |
| 2 | 24 | | EA | 620655 | VALVE SEAT GASKETS, SOFT SOLID, HIGH & LOW PRESSURE CYLINDER, PART PART #X1D14T52-46, FOR K-4 INGERSOLL-RAND TYPE FS-2 COMPRESSOR, SERIAL NO. 92635, SIZE 14 X 12 X 6 X 13, (GASKET SIZES-4 7/8 I.D. X 5 5/8 X 1/8 THK., IRON CLAD, ASBESTOS FILLED) | |

Account Number

2-807-8301-03-203

Company

ITEM #2  2-807-1600-61

| Business Assoc. No. | Commodity Code |
|---|---|

By  Title

Direct inquiries regarding this order to Phone

Send invoice in triplicate to–

TM000056

Exhibit P

**LEVY KONIGSBERG** LLP
ATTORNEYS AT LAW
800 THIRD AVENUE
NEW YORK, N.Y. 10022

NEW JERSEY OFFICE
QUAKERBRIDGE EXECUTIVE CENTER
101 GROVERS MILL ROAD
LAWRENCEVILLE, NJ 08648
TELEPHONE: (609) 720-0400
FAX: (609) 720-0457

(212) 605-6200
FAX: (212) 605-6290
WWW.LEVYLAW.COM

Writer's Direct E-Mail
jguinan@levylaw.com

OTHER OFFICES:

ATLANTA, GA
SARATOGA, NY

October 3, 2014

Via First Class Mail
William Mendrzycki, Esq.
P.O. Box 1009
Highland Mills, NY 10930-1009

### Re: Honeywell International, Inc. Settlements

Dear Mr. Mendrzycki,

I am writing to confirm our agreement to settle the following cases with your Client, *Honeywell International, Inc.* for the following amounts:

| Plaintiff | Amount |
|-----------|--------|
|           |        |

It is understood that payment shall be made in this case within thirty (30) days of our tender of a duly-executed release to you.

00347451.WPD

William Mendrzycki, Esq.
October 3, 2014
Page 2


We have also agreed to dismiss the following cases due to lack of exposure to and/or identification of your client's products:



Brown, Harold



Very truly yours,
LEVY KONIGSBERG, LLP


John Guinan, Esq.

JG/ag

00347431.WPD

# Exhibit Q

**Kagan, Leah**

| | |
|---|---|
| **From:** | Stein, Ethan D. <EStein@gibbonslaw.com> |
| **Sent:** | Monday, April 06, 2015 11:48 AM |
| **To:** | 'Goldklang, Michael D.' |
| **Cc:** | 'Lytle, Robert E.'; 'NJAsbestos@mmodklaw.com'; 'Asbestos@hkmpp.com'; 'gilbert@eg-law.com'; 'Jtomaino@lcbf.com'; 'jclark@mcgivneyandkluger.com'; 'MKNJasbestos@mkla.us.com'; 'Newark - Asbestos'; 'ngiacumbo@mcgivneyandkluger.com'; 'asbestos@ofwvlaw.com'; 'asbestos@buddlarner.com'; 'ddadlani@smsm.com'; 'Segalmccambridgenewjerseycases@smsm.com'; 'Sdivita@pdltlaw.com'; 'rviola@hptylaw.com'; 'eabbot@hptylaw.com'; 'mdebrowski@hptylaw.com'; 'cmongiovi@hptylaw.com'; 'NJAsbestos@rawle.com'; 'Acaruso@carusosmith.com'; Kagan, Leah; 'H. Lockwood (Chip) Miller' |
| **Subject:** | RE: Brown v. Caterpillar, Inc., et al (L-2641-14 AS) |
| **Attachments:** | SKONICA_NY015040611505.pdf |

Dear Counsel:  Attached is the "FILED" stipulation of dismissal between plaintiff's counsel and counsel for Honeywell in this matter.

Regards,
Ethan



**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify me immediately by reply e-mail or call the Gibbons P.C. Help Desk at 973-596-4900 (e-mail: helpdesk@gibbonslaw.com) and delete this message, along with any attachments, from your computer.

---

**From:** Goldklang, Michael D. [mailto:Michael.Goldklang@leclairryan.com]
**Sent:** Monday, April 06, 2015 11:28 AM
**To:** 'kathleen.carvin@judiciary.state.nj.us'; 'david.ulric@judiciary.state.nj.us'
**Cc:** 'Lytle, Robert E.'; 'NJAsbestos@mmodklaw.com'; 'Asbestos@hkmpp.com'; 'gilbert@eg-law.com'; 'Jtomaino@lcbf.com'; 'jclark@mcgivneyandkluger.com'; 'MKNJasbestos@mkla.us.com'; Newark - Asbestos; 'ngiacumbo@mcgivneyandkluger.com'; 'asbestos@ofwvlaw.com'; 'asbestos@buddlarner.com'; Stein, Ethan D.; 'ddadlani@smsm.com'; 'Segalmccambridgenewjerseycases@smsm.com'; 'Sdivita@pdltlaw.com'; 'rviola@hptylaw.com'; 'eabbot@hptylaw.com'; 'mdebrowski@hptylaw.com'; 'cmongiovi@hptylaw.com'; 'NJAsbestos@rawle.com'; 'Acaruso@carusosmith.com'; 'lkagan@levylaw.com'; H. Lockwood (Chip) Miller
**Subject:** Brown v. Caterpillar, Inc., et al (L-2641-14 AS)

Dear Ms. Carvin and Mr. Ulric:

My Firm represents Defendant Ford Motor Company in the Brown asbestos matter (L-2641-14 AS). We are writing to request a 1 cycle adjournment of Ford's pending motion for summary judgment, presently returnable April 10, to April 24, 2015. We have obtained Plaintiff's consent in this request.

# Exhibit R

Ethan D. Stein
NJ Attorney ID#: 040581995
**GIBBONS P.C.**
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500
Attorneys for Defendant
Honeywell International Inc. (f/k/a AlliedSignal Inc.,
as successor-in-interest to the Bendix Corporation)

| | |
|---|---|
| ESTATE OF HAROLD BROWN, <br><br> Plaintiff, <br><br> vs. <br><br> CATERPILLAR INC., et al., <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: MIDDLESEX COUNTY <br> Docket No.: MID-L-2641-14 AS <br> ASBESTOS LITIGATION <br><br> CIVIL ACTION <br><br> **STIPULATION OF DISMISSAL AS TO DEFENDANT HONEYWELL INTERNATIONAL INC., F/K/A ALLIEDSIGNAL INC., AS SUCCESSOR IN INTEREST TO THE BENDIX CORPORATION ONLY** |

**IT IS STIPULATED** by and between counsel of record for Plaintiff and Defendant, that

this action against Defendant, Honeywell International Inc. (f/k/a AlliedSignal Inc., as successor

in interest to the Bendix Corporation) is dismissed with prejudice and without costs to either of

the parties. This stipulation may be filed with the Court's Clerk, without further notice. This

stipulation does not affect this action's continuance against other parties.

**GIBBONS P.C.**
Attorneys for Defendant
Honeywell International Inc.

By:_____
       Ethan D. Stein

**LEVY KONIGSBERG, LLP**
Attorneys for Plaintiff

By:_____
       Robin Blumenkranz, Esq.
NJ attorney ID: 0848520I3

Exhibit S

**Kagan, Leah**

| | |
|---|---|
| **From:** | Kagan, Leah |
| **Sent:** | Monday, April 06, 2015 12:00 PM |
| **To:** | 'Stein, Ethan D.' |
| **Subject:** | RE: Brown v. Caterpillar, Inc., et al (L-2641-14 AS) |

Ethan,

We have a problem... can you talk?

Leah C. Kagan
*Associate*

 LEVY
KONIGSBERG LLP

WWW.LEVYLAW.COM

800 THIRD AVENUE, 11ᵗʰ FL, NEW YORK, NY 10022
PHONE: (212) 605-6304, FACSIMILE: (212) 605-6290

**From:** Stein, Ethan D. [mailto:EStein@gibbonslaw.com]
**Sent:** Monday, April 06, 2015 11:48 AM
**To:** 'Goldklang, Michael D.'
**Cc:** 'Lytle, Robert E.'; 'NJAsbestos@mmodklaw.com'; 'Asbestos@hkmpp.com'; 'gilbert@eg-law.com'; 'Jtomaino@lcbf.com'; 'jclark@mcgivneyandkluger.com'; 'MKNJasbestos@mkla.us.com'; 'Newark - Asbestos';
'ngiacumbo@mcgivneyandkluger.com'; 'asbestos@ofwvlaw.com'; 'asbestos@buddlarner.com'; 'ddadlani@smsm.com';
'Segalmccambridgenewjerseycases@smsm.com'; 'Sdivita@pdltlaw.com'; 'rviola@hptylaw.com'; 'eabbot@hptylaw.com';
'mdebrowski@hptylaw.com'; 'cmongiovi@hptylaw.com'; 'NJAsbestos@rawle.com'; 'Acaruso@carusosmith.com'; Kagan,
Leah; 'H. Lockwood (Chip) Miller'
**Subject:** RE: Brown v. Caterpillar, Inc., et al (L-2641-14 AS)

Dear Counsel: Attached is the "FILED" stipulation of dismissal between plaintiff's counsel and counsel for Honeywell in
this matter.

Regards,
Ethan

 GIBBONS

**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged,
confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any
dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you
have received this message in error, please notify me immediately by reply e-mail or call the Gibbons P.C. Help
Desk at 973-596-4900 (e-mail: helpdesk@gibbonslaw.com) and delete this message, along with any attachments,
from your computer.

**From:** Goldklang, Michael D. [mailto:Michael.Goldklang@leclairryan.com]
**Sent:** Monday, April 06, 2015 11:28 AM
**To:** 'kathleen.carvin@judiciary.state.nj.us'; 'david.ulric@judiciary.state.nj.us'
**Cc:** 'Lytle, Robert E.'; 'NJAsbestos@mmodklaw.com'; 'Asbestos@hkmpp.com'; 'gilbert@eg-law.com';

# Exhibit T

**Kagan, Leah**

| | |
|---|---|
| **From:** | Kagan, Leah |
| **Sent:** | Monday, April 06, 2015 12:58 PM |
| **To:** | estein@gibbonslaw.com |
| **Subject:** | Bendix NJ Stips |

Hey,

It has come to my attention that our settlement department – overzealously – signed lots of stips of dismissal, including for cases in NJ where we just don't sign stips. This includes some Bendix cases, some potential trial cases. As part of the settlement discussions last year in NJ, John agreed to dismiss a handful of NJ cases. But again, that is proceeding under our NJ system without stips of dismissal but either unopposed motions or stips if the case is not going to go to trial. Here are the cases I now have a problem in:

- Brown
- Leady
- Duke
- Nelson
- Terracciano

Stips were also signed in Cipriano and Davidson but those are not active and otherwise resolved so it is not an issue. Can we please vacate the stips of dismissal and Bendix can either file unopposed MSJs (we will consent obviously) or we will execute stips once it is clear the case is not going to try. The two I am most worried about are Brown and Duke which likely will try.

Let me know.

Leah C. Kagan
*Associate*

 LEVY KONIGSBERG LLP
W W W . L E V Y L A W . C O M
800 THIRD AVENUE, 11th FL, NEW YORK, NY 10022
PHONE: (212) 605-6304, FACSIMILE: (212) 605-6290

Exhibit U

**Kagan, Leah**

| | |
|---|---|
| **From:** | Stein, Ethan D. <EStein@gibbonslaw.com> |
| **Sent:** | Monday, April 06, 2015 4:08 PM |
| **To:** | Kagan, Leah |
| **Subject:** | RE: Bendix NJ Stips |

Hi Leah, sorry about that.   I'd forwarded the stipulations to your firm, and unfortunately didn't remember that you don't sign stips where dismissals are agreed-to.  I was getting some pressure to get stips done because of the huge number of notices in lieu of subpoena Honeywell is now getting since the time of the Judge's ruling against NJ corporations such as Honeywell in Rowe.   I got back the "FILED" stip in Brown, as you know, and I can try to get that vacated, but as you know that may be a little like getting the toothpaste back in the tube at this point, since I sent around the stip.   It shouldn't be as much of a problem for Duke and the other ones, which we haven't gotten back as "FILED," although I expect those to come in soon.  I'll have my secretary prepare letters to the Court to vacate the stipulations of dismissal on your "problem" cases tomorrow.

Also, just so you know, I am away with my family this week on a vacation (we're in London).  There may be occasional time-zone issues but I am checking in with my office at least a couple times per day, so I will get back to you if you want to discuss this further..

# GIBBONS

**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify me immediately by reply e-mail or call the Gibbons P.C. Help Desk at 973-596-4900 (e-mail: helpdesk@gibbonslaw.com) and delete this message, along with any attachments, from your computer.

**From:** Kagan, Leah [mailto:LKagan@levylaw.com]
**Sent:** Monday, April 06, 2015 12:58 PM
**To:** Stein, Ethan D.
**Subject:** Bendix NJ Stips

Hey,

It has come to my attention that our settlement department – overzealously – signed lots of stips of dismissal, including for cases in NJ where we just don't sign stips. This includes some Bendix cases, some potential trial cases. As part of the settlement discussions last year in NJ, John agreed to dismiss a handful of NJ cases. But again, that is proceeding under our NJ system without stips of dismissal but either unopposed motions or stips if the case is not going to go to trial. Here are the cases I now have a problem in:

- Brown
- Leady
- Duke
- Nelson
- Terracciano

Stips were also signed in Cipriano and Davidson but those are not active and otherwise resolved so it is not an issue. Can we please vacate the stips of dismissal and Bendix can either file unopposed MSJs (we will consent obviously) or we will execute stips once it is clear the case is not going to try. The two I am most worried about are Brown and Duke which likely will try.

Let me know.

Leah C. Kagan
*Associate*



LEVY
KONIGSBERG LLP
WWW.LIVYLAW.COM
800 THIRD AVENUE, 11th FL, NEW YORK, NY 10022
PHONE: (212) 605-6304, FACSIMILE: (212) 605-6290

CONFIDENTIALITY STATEMENT

This e-mail transmission and any accompanying attachment contains information that is confidential, privileged and exempt from disclosure under applicable law. This e-mail is intended only for the use of the individual or entity to which it is addressed. If you receive this e-mail in error or you are not the intended recipient, do not read, copy or disseminate in any manner. If you are not the intended recipient, you may not disseminate, distribute or copy this communication and any disclosure, copying, distribution, use or taking any action in reliance on the contents of this information is strictly prohibited. If you received this communication in error, please reply to the message immediately by informing the sender that the message was misdirected and after advising the sender you must erase the message from your computer system and destroy any hard copies that may have been made. Thank you for your assistance in correcting this error.

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

# Exhibit V

## Kagan, Leah

| | |
|---|---|
| **From:** | Stein, Ethan D. <EStein@gibbonslaw.com> |
| **Sent:** | Monday, April 13, 2015 3:23 PM |
| **To:** | 'Agatha Dzikiewicz' |
| **Cc:** | Kagan, Leah |
| **Subject:** | Issue Concerning Stipulations of Dismissal |

Agatha, I have an issue that's arisen in connection with a number of stipulations of dismissal that were recently signed between Gibbons and Levy Konigsberg, and filed with the Clerk's office. They related to some Honeywell inventory of various cases that were essentially no-pay, which went along with other pay cases in settlement groups. I'd sent a large number of stipulations to Levy Konigsberg, and apparently they included a few cases that plaintiffs did not intend to sign, but which were inadvertently signed by a junior attorney and returned to me. After I'd served the "FILED" stipulation in the Harold Brown case on all counsel, Leah Kagan raised the problem with me (I was away on vacation last week out of the country) and asked me if there was a way to vacate the stipulations, which is something I've not had experience with.

Do you have a few minutes today or tomorrow to discuss this issue with me and Leah, to possible give guidance on how we can proceed here, in terms of raising it with the Judge?

Thanks as always for your assistance.

Ethan


Ethan D. Stein
Counsel
Gibbons P.C.
One Penn Plaza, 37th Floor
New York, NY 10119-3701
(212) 613-2041
estein@gibbonslaw.com


## GIBBONS

**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify me immediately by reply e-mail or call the Gibbons P.C. Help Desk at 973-596-4900 (e-mail: helpdesk@gibbonslaw.com) and delete this message, along with any attachments, from your computer.

# Exhibit W

## Kagan, Leah

| | |
|---|---|
| **From:** | Agatha Dzikiewicz <Agatha.Dzikiewicz@judiciary.state.nj.us> |
| **Sent:** | Monday, April 13, 2015 3:30 PM |
| **To:** | 'Stein, Ethan D.' |
| **Cc:** | Kagan, Leah |
| **Subject:** | RE: Issue Concerning Stipulations of Dismissal |

Let me think of a solution before we chat.

**From:** Stein, Ethan D. [mailto:EStein@gibbonslaw.com]
**Sent:** Monday, April 13, 2015 3:23 PM
**To:** Agatha Dzikiewicz
**Cc:** 'Kagan, Leah'
**Subject:** Issue Concerning Stipulations of Dismissal

Agatha, I have an issue that's arisen in connection with a number of stipulations of dismissal that were recently signed between Gibbons and Levy Konigsberg, and filed with the Clerk's office. They related to some Honeywell inventory of various cases that were essentially no-pay, which went along with other pay cases in settlement groups. I'd sent a large number of stipulations to Levy Konigsberg, and apparently they included a few cases that plaintiffs did not intend to sign, but which were inadvertently signed by a junior attorney and returned to me. After I'd served the "FILED" stipulation in the Harold Brown case on all counsel, Leah Kagan raised the problem with me (I was away on vacation last week out of the country) and asked me if there was a way to vacate the stipulations, which is something I've not had experience with.

Do you have a few minutes today or tomorrow to discuss this issue with me and Leah, to possible give guidance on how we can proceed here, in terms of raising it with the Judge?

Thanks as always for your assistance.

Ethan

Ethan D. Stein
Counsel
Gibbons P.C.
One Penn Plaza, 37th Floor
New York, NY 10119-3701
(212) 613-2041
estein@gibbonslaw.com



**Disclaimer**
The contents of this message, together with any attachments, may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, printing, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify me immediately by reply e-mail or call the Gibbons P.C. Help Desk at 973-596-4900 (e-mail: helpdesk@gibbonslaw.com) and delete this message, along with any attachments, from your computer.

# Exhibit X

**Kagan, Leah**

| | |
|---|---|
| **From:** | David L. Silberman <dls@wlbdeflaw.com> |
| **Sent:** | Wednesday, April 15, 2015 4:22 PM |
| **To:** | rlytle@szaferman.com; Kagan, Leah |
| **Cc:** | Michael J. Block; psmyth@moodklaw.com; gvanlieu@ofwvlaw.com; jtomaino@lcbf.com; RobynGnudi.Kalocsay@leclairryan.com; jmcmeekin@rawle.com; hmiller@goldbergsegalla.com; Marcia J. Adika; Helen G. Rosenthal |
| **Subject:** | Brown, Douglas; Case No. L-2641-14 (AS) |
| **Attachments:** | Brown, Harold (CMN) WLB letter to plaintiffs counsel Re removal.pdf; Brown, Harold (CMN) Civil Cover Sheet.pdf; Brown, Harold (CMN) Rule 7.1 Disclosure.pdf; Brown, Harold (CMN) Notice of Removal (Fed).pdf; Brown, Harold (CMN) Notice of Removal (Exh A-L).PDF; Brown, Harold (CMN) Notice of Removal (Exh M (1 of 2)).pdf; Brown, Harold (CMN) Notice of Removal (Exh M (2 of 2)).pdf |

Attached please find a copy of the Notice of Removal in the above-referenced case that was filed with the District of New Jersey today.

David L. Silberman, Paralegal
**Wilbraham, Lawler & Buba**
1818 Market Street, Ste. 3100
Philadelphia, PA 19103
(215) 564-4141 (Main)
(215) 972-2835 (Direct)

**NOTICE:** This e-mail message and all attachments transmitted with it are intended solely for the use of the addressee and may contain legally privileged and confidential information. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by replying to this message and please delete it from your computer.

This email message has been delivered safely and archived online by Mimecast. For more information please visit http://www.mimecast.com